### SCHUSTER v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

1. RAILROADS (§ 350*)—ACCIDENTS AT CROSSINGS—SIGNALS AND WARNINGS —EVIDENCE.

In an action for death at a railroad crossing, evidence *held* sufficient to go to the jury as to whether the bell was ringing or the whistle was sounded.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.*]

2. EVIDENCE (§ 147*)—ACCIDENTS AT CROSSINGS—SIGNALS AND WARNINGS.

In actions for injuries at railroad crossings, negative evidence is admissible on question of whether the engine bell was ringing or the whistle blown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 435–437; Dec. Dig. § 147.*]

3. EVIDENCE (§ 588*)—WEIGHT—CREDIBILITY OF WITNESSES.

In actions against a railroad company for an accident at a crossing, the engineer and fireman are interested witnesses, as they may be actuated by a motive to escape blame, and their credibility is involved, and the jury may therefore disbelieve their testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. § 588.*]

4. RAILROADS (§ 350*)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE —JURY QUESTION.

In an action for death of a 12 year old boy at a railroad crossing, *held* under the evidence, that the question of contributory negligence was for the jury.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.*]

Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action by Mary Schuster, as administratrix, etc., of Valentine Schuster, deceased, against the Erie Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The action was commenced on the 15th day of June, 1909, to recover damages resulting from the death of plaintiff's intestate, alleged to have been caused solely through the negligence of the defendant. The only questions presented on this appeal are: (1) Was the evidence such as to properly support the findings of the jury that the defendant was guilty of negligence which caused the death of plain-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff's intestate; and (2) that the deceased was free from contributory negligence?

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

John W. Ryan, for appellant.
Clifford E. Branch, for respondent.

McLENNAN, P. J. The accident which is the subject of this litigation occurred on the 16th day of May, 1909, in the forenoon between 10 and 11 o'clock. The defendant operated a single-track steam railroad extending practically east and west through the town of Hamburg, in the county of Erie. The State Road, so called, one of the principal highways in said town, runs north and south, and crosses the tracks of defendant's railroad at practically a right angle. Just prior to the accident plaintiff's intestate, who was 12 years and 4 months of age, a bright, active boy, about 4 feet in height, in company with his brother, who was 16 years of age, left their home, where they resided with their father and mother, situate on the State Road, about 1,350 feet south of the crossing, to go to a store situate north of the crossing to purchase some groceries for the family. An engine drawing a passenger train going east struck plaintiff's intestate at the crossing, causing his instant death. At the time of the accident there was a strong wind blowing from the east and against the approaching train. The evidence very conclusively established that the train approached the crossing at a speed of at least between 40 and 50 miles an hour. The track was on a downgrade towards the crossing and to the east of 65 feet to the mile. At the time of the accident the train was coasting; the steam being shut off, and was making comparatively little noise.

It is practically uncontradicted that on the south side of the railroad track, and parallel with it, there is a bank 40 or 50 feet in length, and which extends to within 6 feet of the highway. The height of such bank was variously estimated by the witnesses to be from four to six feet. The civil engineer, who was a witness for defendant, estimated its height at five feet. The width of the bank was from 15 to 20 feet. Indeed, a witness called by the defendant thought it was much wider. The bank came down to within four or five feet of the southerly rail of the track. Upon this bank, covering its entire surface, there was a thick growth of weeds, brush, and bushes, which stood upwards of four feet high above the top of the bank, and there were at the time leaves upon such bushes. In addition to these bushes, there were other permanent growths and obstructions upon the bank, such as hickory and elm trees, and fence posts and telegraph posts, which were the same in winter as in summer. The growth of bushes not only stood thick upon the top of the bank, but near the crossing the bushes hung over the edge of the bank and leaned towards the tracks, so that they came within four or five feet of the track. Witnesses were called by plaintiff who testified, and it is self-evident, that this bank, with the growth of bushes and other obstructions upon it, materially interfered with a person's ability to see a train approaching

from the west as such person was proceeding north on the highway. Indeed, witnesses testified that in their opinion it was impossible to see 400 feet up the track from a distance of 5 feet south of the south rail, and that no more than half that distance could be seen from a point 10 feet away from the track.

The plaintiff urges, and the jury has found, that the defendant was guilty of negligence, in that it failed to give proper warning of the approach of the train. It is insisted that the evidence justifies the conclusion that the bell was not rung and that no whistle was sounded except the emergency whistle, which was used just as the deceased was struck. It is urged on behalf of the defendant that all the evidence tending to show that the bell did not ring, or that the whistle was not sounded for the crossing, is negative evidence, and should not be allowed to prevail as against the positive evidence of the engineer, fireman, train conductor, a clerk employed by the defendant, a passenger on the train, and one witness who was driving toward the scene of the accident on the State Road at a point 800 or 900 feet north, all of whom testified that the whistle for the crossing was blown at the usual place, which is upward of 1,000 feet from the crossing, and the engineer and the fireman testified that the bell, which rung automatically, was ringing as the train approached the crossing, and Myers, the clerk employed by the defendant, testified that the bell was ringing at Hamburg before the accident, and was ringing when the train backed up after the accident. A witness called by the plaintiff, who testified in respect to this question, was the mother of the deceased, who said that she was in her bedroom with the window up, and from which she could see the crossing, and that she heard no bell or whistle except the emergency whistle, which she distinctly heard. She, of course, does not say that she was listening to ascertain whether the bell was ringing or the whistle sounded on the crossing. Casper Schuster, the father of the deceased, testified that he was in a room in his house with its door and windows open; that he heard the emergency whistle plainly, but that he heard no other whistle sounded, and did not hear the bell rung. A witness by the name of Foley testified that he was in a house 500 feet north of the crossing, and that he heard the shrill sound of the whistle at the crossing, and that he did not hear any other whistle or the sound of the train as it approached the crossing. Steven Schuster, the brother of the deceased, who was 16 years of age, testified, in substance, that his hearing was good; that as he and his brother approached the crossing they were looking and listening to ascertain if a train was approaching. He says that he did not hear any whistle or the train as he walked down from the house; neither did he hear any bell. He says further that up to the time when the train struck his brother he had not heard it. He says that he heard the whistle when it struck his brother, and that that was the only whistle which he heard.

[1] It would seem that under all the authorities the evidence offered by the plaintiff upon this branch of the case was sufficient to carry the case to the jury upon the question as to whether or not the bell was ringing or the whistle for the crossing was sounded, especially in view of the evidence of Steven Schuster, who testified that he was

looking and watching to see if a train was approaching the crossing. In other words, that he was on the alert.

[2] The evidence of the other witnesses was clearly competent. The force or effect to be given to it was for the jury. But even if the bell was rung as testified to by the engineer, fireman, and clerk, who were in the employ of the defendant, and if upon the evidence the jury was justified in finding that the whistle was not sounded as it approached the crossing, in view of the fact that a strong wind was blowing from the east which would to some extent prevent the sound of the bell from being heard, it was for the jury to say whether or not the defendant was not guilty of actionable negligence.

The question of negative evidence as bearing upon questions of this character was thoroughly considered by the Court of Appeals in the case of Greany v. Long Island Railroad Co., 101 N. Y. 419, 5 N. E. 425. In that case the court said:

"The appellant * * * contends, first, that certain negative evidence from persons who did not affirmatively appear to have been 'looking, watching or listening for the ringing of a bell or sounding of a whistle,' was improperly received to prove that those signals were not given; and, second, that the plaintiff should have been nonsuited on the ground of her contributory negligence. As to the first, it is apparent that the best evidence of the fact in dispute would be the testimony of those persons who on the particular occasion in question had the custody or management of the bell or whistle. They were, however, in the employ of the defendant, themselves interested in proving that the proper signals were given by those instruments, and the law does not require an adverse party to put his case in the hands of persons having such relations to the transaction. Besides those persons, all others must give evidence secondary in character. One person might be watching the bell—looking at it, or listening for its sound. The value of his testimony would depend upon his nearness to the machine, the accuracy of his sense of sight or hearing, the existence, or force, or direction of the wind, and other causes. Another person might be neither looking nor listening, and yet his position be such, and the circumstances about him so favorable, that his testimony would be of equal or greater persuasive power than that of the other. A jury must ascertain. An appellate court cannot say that the testimony of either should be rejected. Nor should a trial judge be required to determine its weight, or the fact which it did or did not ascertain, if it has any legal effect. No error, therefore, was committed in allowing the witnesses K., T., and R. to testify. They were passengers upon the train causing the injury, were in such position that it would not have been impossible for them to have heard the signal if it had been given. There was also abundant evidence from persons whose attention was directed to the train to justify a finding that the statutory signals were not given, and the whole was submitted to the jury not only in a manner to which no exception was taken, but upon this point, in the very language suggested by the learned counsel for the defendant, adapted to the occasion from Culhane v. N. Y. C. & H. R. R. Co., 60 N. Y. 133, upon which without proper foundation he then relied and now cites. It cannot be so extended as to justify the exclusion of evidence."

In the case at bar the learned counsel for defendant took no exception to the submission to the jury by the learned trial judge of the question as to whether or not the signals were given.

[3] Besides, in this case, the engineer and fireman, who gave evidence upon this branch of the case, were employés of the defendant, and therefore interested witnesses, and might have been actuated by a motive to shield themselves from blame. Their credibility was in-

volved, and the jury was at liberty to disbelieve their testimony. Williams v. Central Railroad of New Jersey, 93 App. Div. 582, 88 N. Y. Supp. 434; O'Flaherty v. Nassau E. R. Co., 34 App. Div. 74, 54 N. Y. Supp. 96; Volkmar v. M. R. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678.

We conclude that the question of defendant's negligence was a question of fact, and was properly submitted to the jury, and that its finding that the defendant was so guilty of negligence was fairly supported by the evidence, and should not be disturbed.

[4] The question of plaintiff's contributory negligence was clearly for the jury. Steven Schuster, the brother of the deceased, was the only eyewitness to the accident other than the engineer. He testified that, when the deceased was at the third or fourth telegraph pole from the track, he looked first up and then down, and that the witness also looked, and that they saw and heard nothing; that there was a strong wind blowing from the east towards Hamburg; that they could not see the track until they got near the crossing; that, when he was at the third or fourth telegraph pole, the train was not in sight; that they could not see the track again until they got within about 10 or 15 feet of it, and then they could see a couple lengths of rail; that at that point they looked; that the deceased first looked up towards Hamburg; that he was not far from the rail, first he said two feet, but afterwards corrected himself, and said about ten feet, when he looked towards Hamburg; that he did not stop, but kept right on moving; that he looked down next towards Buffalo, towards the Susquehanna bridge, walking along all the time; that he personally looked down there, too, and looked towards Hamburg before he got on the track; that he looked a little before the deceased did; that when witness looked he was somewhere about 15 feet away the first time; that at that time he could not see very far up the track, about four rails or something like that; that he did not see anything; that he did not hear any whistle from the train or any bell; that after the deceased looked down towards Hamburg he looked towards Buffalo; that they were then walking along, and that the deceased was going to look back again when the train struck him.

As we have seen, the bank to the south of the railroad and parallel with it was some five feet in height, and was covered with a growth of bushes and shrubs four feet in height, with occasionally hickory and elm trees, telegraph poles, and posts, which obstructed the view of the deceased and his companion as they approached the crossing. In view of the conditions which prevailed at this crossing, the fact that, as the jury has found, no signal was given for the crossing, and, in view of the precautions which the deceased and his brother took to ascertain whether a train was approaching the crossing, we think that clearly the question of intestate's contributory negligence was for the jury. Many cases might be cited which amply sustain such proposition. Massoth v. Delaware & Hudson Canal Co., 64 N. Y. 524; Byrne v. N. Y. C. & H. R. R. Co., 83 N. Y. 620; Kellogg v. N. Y. C. & H. R. R. Co., 79 N. Y. 72; Pitts v. N. Y., L. E. & W. R. R. Co., 79 Hun, 546, 29 N. Y. Supp. 871, affirmed 152 N. Y. 623, 46 N. E. 1150;

Branch v. N. Y. C. & H. R. R. Co., 39 App. Div. 435, 57 N. Y. Supp. 344; Smith v. N. Y. C. & H. R. R. Co., 177 N. Y. 224, 69 N. E. 427.

It is concluded that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs.

SPRING and ROBSON, JJ., dissent.