MICHAEL W. CROUGH, as Administrator, etc., of DONALD CROUGH, Deceased, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

DANIEL P. CROUGH, as Administrator, etc., of D. FRANCIS CROUGH, Deceased, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Fourth Department, April 30, 1930.

*Richard P. Byrne,* for the appellants.

*Daniel Scanlon,* for the respondent.

PER CURIAM. About one mile east of the village of Cayuga, N. Y., the Lehigh Valley railroad and defendant's railroad run easterly and westerly substantially parallel with each other. At a highway grade crossing where the railroads are forty-eight feet apart, plaintiff's intestate, D. Francis Crough, drove his automobile northerly across the tracks, and he and three young companions were killed by a westerly-bound New York Central train. Verdicts have been directed in favor of defendants in each of two actions brought by administrators under the Decedent Estate Law (§ 130 *et seq.,* as added by Laws of 1920, chap. 919).

The burden was upon defendant to prove contributory negligence

in plaintiffs' intestates. The only witness who watched intestates as they approached and crossed the track was defendant's witness, Paul Woods, the locomotive fireman. He says nothing about the conduct of the occupants of the automobile. So there was no testimony affirmatively showing contributory negligence, the contrary having been the case in *Castle* v. *Director-General of Railroads* (232 N. Y. 430, 433). Therefore, since there was at least a "possible hypothesis based on the evidence [forbidding] the imputation of fault to the deceased, as matter of law" (*Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 N. Y. 233, 235), contributory negligence was a jury question.

Except for the space within twenty-five feet of the New York Central track, the view from the south of the railroad and of westerly-bound trains was materially concealed by trees, bushes and grass. From the Lehigh Valley track to the New York Central track the grade of the highway involved was upward, and steeper near the New York Central track. No claim was made upon the trial that the crossing was not a public one. Defendant's fireman and engineer (interested witnesses) testified that the locomotive bell was automatically ringing continuously while the train approached the crossing, and that a crossing whistle was blown 1,000 or 1,200 feet east of the crossing. Eight other witnesses testified for defendant that a whistle was blown at some time before the locomotive reached the crossing. The reasonable deduction from the testimony of three of them is that the whistle was sounded close to the crossing, contrary to the testimony of the engineer and fireman. Two of these witnesses were Pullman porters on the train, whose testimony as to the location of the locomotive when the whistle sounded was indefinite; another witness, Hazel White, was interested; five of the witnesses were at a "camp," where most of plaintiffs' witnesses were, at least 250 feet southerly from the crossing. For plaintiffs, six witnesses testified that they heard no bell nor whistle before the crash, and six that no whistle was sounded. In the latter class was Walter M. Warwick, driving an automobile easterly on the highway parallel with the New York Central track and immediately northerly of it. In the former class was Martha Watkins. She was picking strawberries on the New York Central right of way close to the track, about 250 feet east of the crossing, and saw the train all the time after it rounded a curve one-half mile from the crossing and until it passed her. Plaintiffs' other witnesses were at the "camp" and were at different points from 250 to 500 feet southerly of the crossing. They were not listening for signals nor paying particular attention to them, but were so located and circumstanced as to

have been reasonably likely to hear a whistle had one been sounded before the collision.

Many cases in this State have dealt with the probative value of so-called negative testimony .of witnesses as to the giving of railroad signals. Each case depends upon its own particular facts. We do not feel that under the record before us the opinions in *Foley* v. *N. Y. C. & H. R. R. R. Co.* (197 N. Y. 430); *Matutinovich* v. *N. Y. Central Railroad Co.* (182 App. Div. 451) and other cases of like trend, compel us to affirm. We are of the opinion that in the instant cases it was for the jury to say whether or not negligence of the defendant in not having given adequate signals of the approach of the train was the proximate cause of the mishap. (*Schuster* v. *Erie Railroad Co.*, 145 App. Div. 71; affd., 205 N. Y. 569; *Greany* v. *Long Island Railroad Co.*, 101 id. 419; *Horton* v. *N. Y. C. R. R. Co.*, 202 App. Div. 428.)

The judgments appealed from should be reversed on the law and a new trial granted in each case, with costs to appellants to abide the event.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

In each case: Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.