ANNA BELL McCOWAN, as Administratrix, etc., of JAMES McCOWAN, Deceased, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY and Another, Respondents.

JENNIE CHRISTIE, as Administratrix, etc., of LEIGH H. CHRISTIE, Deceased, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY and Another, Respondents.

Fourth Department, May 20, 1931.

*Stedman & Waterman* [*Bayard J. Stedman* with him on the brief], for the appellants.

*Moser & Reif* [*Clarence P. Moser* with them on the brief], for the respondents.

CROSBY, J. These two actions were tried together. The two decedents were killed in a collision between an auto truck in which they were riding and a train of the defendant Lehigh Valley Railroad Company. The defendant Cullen is a division engineer of the railroad company and is sued because it is alleged that he caused an obstruction to be erected near the crossing where the accident occurred, so that the view of approaching trains was cut off. The defendant railroad company is sued for failure to give timely and adequate warning. On motions for nonsuit the complaints were dismissed at the end of plaintiffs' evidence.

Clearly there was evidence sufficient to take the cases to the jury on the issue of the negligence of the railroad in failing to give adequate warning, but the trial court nonsuited the plaintiffs upon the theory that, from the showing of plaintiffs, the decedents were guilty of contributory negligence as a matter of law. The evidence was meager, as there were no eye witnesses to the accident, at least none produced by the plaintiffs. The station agent of defendant railroad was produced by plaintiffs as a witness, and, in addition to testifying that he heard no crossing signal, he testified

that about a minute before the accident he saw the two decedents, one in the truck and one near it, at a point in the highway about fifty-five feet northerly from the railroad track with the truck headed southerly loaded with some brush. The decedents were in the employ of the town and were engaged in picking up limbs broken, by a violent storm, from trees along the highway, and were taking them to a point southerly from the railroad where they were being burned. A third employee of the town, the witness Englerth, was attending to the fire at the point to which the brushwood was being drawn by decedents. He did not see the accident. The railroad runs substantially east and west, and the highway north and south. At the point where the railroad crosses the highway there is a considerable curve in the tracks, the convex side of the curve being toward the north. The railroad crossing was not planked or cemented, the depressions between the rails being filled in with gravel. There are three tracks of the railroad crossing the highway, the northerly one being a switch track, the middle one being the west-bound main track, and the southerly track being the east-bound main track.

Owing to the curve at the point of the crossing the rails of the track are not at the same level. As to each track the rail on the outside of the curve is higher than the rail on the inside of the curve, so that in driving a vehicle over the crossing the surface of the roadway rises and falls about five inches and repeatedly as the various rails are encountered. Approaching the railroad from the north there is a seven per cent grade. Plaintiffs' witness Wentworth, a civil engineer, characterized this as a " steep grade," and he also characterized the condition of the surface of the crossing as " very uneven."

As shown by the engineer's map and figures, as well as the photographs in evidence, the view toward the east, which one gets in approaching the crossing from the north, is cut off by an old passenger coach which the railroad has set up for use as a depot. This is located forty-two feet from the center of the highway, is sixty feet long and ten feet wide and its southerly side is about seven feet from the nearest track. The extent to which the depot cuts off the view toward the east is best shown by the photographs.

These in brief are some of the physical surroundings that confronted the decedents as they made use of this crossing. It was broad daylight, on a clear, dry day. The negligence of the railroad was proven. There was evidence that its train was running at a very high rate of speed and gave no warning in approaching a much-used crossing. Can it be said that, with the burden of

proving contributory negligence placed upon defendant, such negligence on the part of decedents so clearly appears, from this record, as to exclude every other reasonable hypothesis?

" If any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury." (*Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 N. Y. 235.) (See, also, *Nicholson* v. *Greeley Square Hotel Co.*, 227 id. 349.) The case of *Schrader* v. *New York, Chicago & St. Louis R. R. Co.* (254 id. 148) is one which went through this court (227 App. Div. 840), and, although it was a death case, there was undisputed proof by an eye witness of contributory negligence on the part of decedent, and the court properly directed a verdict at the end of the whole case. In the instant case there is a total absence of any proof by any eye witness. An imputation of contributory negligence has been based solely on the physical conditions and surroundings of the crossing. Even that may be done if such conditions and surroundings clearly exclude all possibility of due care on the part of decedent. (*Cassidy* v. *Fonda, Johnstown & Gloversville R. R. Co.*, 200 App. Div. 241; affd., 234 N. Y. 599.) But, in the instant case, the uneven character of the roadbed of the crossing, the steep grade leading up to the crossing, the obstructed view of the railroad to the east, due to the curve and the station, coupled with the failure of the railroad to give warning of the approach of its train, made this a proper case for submission to the jury.

Upon the record in this case, and in view of the testimony of the town superintendent of highways that the decedent McCowan " was hired to drive the truck," and that he " was in charge of the gang of these three men," and that he " was in charge of the truck," and in view of the other evidence on the subject, it would not seem that the two decedents could be held to have been engaged in a joint enterprise.

As to the defendant Cullen, there is no proof of negligence and the judgments and orders appealed from should be affirmed as to him, without costs.

As to the defendant Lehigh Valley Railroad Company the judgments and orders should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concur, EDGCOMB, J., in result in a separate opinion in which all concur as to the additional ground for reversal. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

EDGCOMB, J. (concurring). I agree with my brethren that the judgment in favor of the Lehigh Valley Railroad Company should be

reversed, and that a new trial should be had, but not for the reasons stated by my Brother CROSBY.

The highway in question runs in a northerly and southerly direction, and crosses the tracks at practically right angles. Decedents were traveling southerly. There are three sets of tracks, the most northerly being a switch or siding, the middle one, on which the fatal train was approaching, being used for west-bound trains, and the most southerly of the three for trains going east.

The physical surroundings at this crossing are such that the view to the east of a traveler going south is more or less obstructed until he reaches a point thirty feet north of the first rail of the west-bound track. From that point on he has a clear and unobstructed view of all three tracks for upwards of one thousand feet. If that was the condition which existed at the time of this accident, and concededly it was unless a temporary obstruction of some kind was present for the moment, I think that decedents were bound to look to the east, at a point where looking would have done some good, to ascertain if they could safely proceed, and that, if they failed so to do, they were guilty of contributory negligence as a matter of law, unless there was some emergency present which diverted their attention, and which would justify a jury in saying that, under the circumstances, they were not unmindful of their duty to safeguard themselves from danger from the east. If decedents saw this approaching train, and contested with it the right to the crossing, I take it there could be no question that they were negligent as a matter of law.

While it has apparently been taken for granted that at the time these men were crossing the tracks there was no temporary obstruction present which in any manner interfered with the normal view which one would have to the east, and that nothing out of the ordinary happened which would justify decedents in relaxing the duty which rested on them to avoid danger from their left, there is no proof on either subject. As the burden rests on the defendants to show contributory negligence, we cannot substitute conjecture or assumption for evidence. Defendants must prove a situation which negatives any excuse for decedents driving on the track in front of this oncoming train.

The photographs show that if freight cars stood on the siding near this crossing, they would, of necessity, interfere with decedents' view as they approached the tracks, and instead of having an unobstructed view to the east of one thousand feet when they were thirty feet from the west-bound track, it is easy to visualize a situation where the front of their truck would be practically on the west-bound track before they could have seen the approaching

train. The burden of showing that the siding was empty at the time of the accident rests on the defendants.

Even if nothing was present to interfere with the customary view of a traveler on the highway, it is not impossible to conceive of an emergency, for which decedents were in no way responsible, which would cause them to relax their thought and attention on any impending danger from their left long enough to make their negligence a question for the jury rather than for the court. For instance, if there were automobiles approaching from the opposite direction at a rapid rate of speed and on the wrong side of the highway, or if a train suddenly appeared from the opposite direction and these things required decedents' attention, a condition might be present which would excuse them from doing that which, under normal circumstances, would be required of them. That such an emergency did not exist at the time has been assumed, but not proven.

I think that the defendants, before they are entitled to a nonsuit upon the theory of contributory negligence, must negative by proof any situation which would make decedents' negligence a question for the jury, and that we cannot take for granted the fact that there was no temporary condition present at the time which would absolve decedents from exercising the care and caution which normally would have been required of them. It is for this reason that I think that the railroad company was not entitled to a nonsuit.

As to the defendant Cullen, I fail to find any evidence which indicates that he was guilty of any negligence which was the proximate cause of this unfortunate accident, and upon that ground I vote to affirm the judgment as to him.

In each case: Judgment and order reversed on the law as to the defendant Lehigh Valley Railroad Company, and a new trial granted as to that defendant, with costs to the appellant to abide the event. Judgment and order affirmed as to the defendant Cullen, without costs of this appeal to any party.