LEE MCKELVEY, as Administrator, etc., of ANDREW ROBERT McKELVEY, Deceased, Respondent, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

LESTER VAN BUSKIRK, as Administrator, etc., of KARL VAN BUS-KIRK, Deceased, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

Fourth Department, December 23, 1937.

Sayles, Flannery, Collin & Evans [Halsey Sayles of counsel], for the appellant.

Crane & Stedman [Scott W. Crane of counsel], for the respondent McKelvey.

Austin W. Erwin, for the respondent Van Buskirk.

EDGCOMB, J. Shortly after eleven o'clock on the morning of January 9, 1937, a coal truck, operated by Andrew Robert McKelvey, and in which Karl Van Buskirk was riding, was struck by a west-bound passenger train of the defendant at a highway crossing in the hamlet of Groveland. Both young men were killed, and their administrators have been awarded verdicts at the hands of a Livingston county jury.

Two highways converge at this crossing, one running in a generally northerly and southerly direction, and known as the Dansville-Geneseo road, and the other in an easterly and westerly direction, and connecting Mount Morris and Sonyea. Decedents were approaching from the south on the Dansville road. The train with which they collided came from their right, and their view in that direction was somewhat obstructed.

Defendant had the paramount right of way at this crossing. There being no ordinance regulating speed at this point, the defendant had the right to propel its trains over the highway at any rate of speed it chose, provided it gave due and timely warning of their approach. (Warner v. N. Y. C. R. R. Co. 44 N. Y. 465; Phelps v. Erie R. R. Co., 134 App. Div. 729; Hunt v. Fitchburg R. R. Co., 22 id. 212.)

There is evidence which, if believed, would warrant a finding that no warning whistle or bell was sounded by the approaching train. But notice that the crossing was to be occupied by the oncoming train could be given in other ways. The trial court so charged the jury; it was said that suitable warning might be given " by gates, by a flagman, by whistle, bell or other signal at the crossing."

A flagman was stationed at this point at the time of the accident to warn travelers on the two converging roads of the danger to be anticipated from an oncoming train. He was at his post of duty, displaying the ordinary " stop " sign as the death-dealing train approached. It is claimed, however, that he stood at the junction of the two roads, and not within the limits of the Dansville-Geneseo road where he could be seen by travelers on that highway.

Gates had been erected at this crossing, but they were out of order at the time of the accident, and had been for several weeks. One arm had been broken off, and lay by the side of the road in plain sight. This was the reason for the presence of the flagman with the " stop " sign. It cannot be claimed that failure to repair and operate the gates, in and of itself, constituted actionable negligence. If the defendant was not bound to maintain gates at the crossing — and its failure so to do could not be made the basis of negligence on its part (*Houghkirk* v. *President, etc., D. & H. C. Co.*, 92 N. Y. 219; *Cumming* v. *Brooklyn City R. R. Co.*, 104 id. 669; *Case* v. *N. Y. C. & H. R. R. R. Co.*, 75 Hun, 527) — it follows that negligence could not be predicated upon the mere fact that the gates were out of commission. This fact might possibly bear on decedents' contributory negligence, if they were unaware of the defective condition of the gates, and were lulled into a sense of security by their not being lowered. (*Elias* v. *Lehigh Valley R. R. Co.*, 226 N. Y. 154.) Decedents, however, were not strangers to this locality. They had been engaged in delivering coal to nearby customers for some two weeks, and had crossed the tracks at this point on numerous occasions during that period.

So we get back to the proposition of whether the presence of the flagman at this crossing gave adequate notice to an ordinarily cautious and prudent traveler on the highway of the approach of the train. The jury should have been fully, clearly and correctly instructed on that phase of the case. This was not done.

Defendant requested the court to charge that the plaintiffs could not recover, if the flagman stood with his " stop " sign in plain sight on the crossing on the south of the tracks or on the south track as the truck in which decedents were riding approached. This request was denied, the court saying that he could not charge

that as matter of law, as it was for the jury to determine whether the defendant by its acts fully discharged the duty of care which it owed the plaintiffs' intestates. This was error. If the flagman stood at this crossing holding a " stop " sign in plain sight of decedents as they approached the tracks, that certainly was adequate notice to any traveler on the highway, who was giving any heed whatever to his surroundings, that it was dangerous to cross the tracks, and that safety lay in refusing to contest the right to occupy the crossing with the railroad company. The request assumes that the warning sign was in plain sight of a traveler on the highway. That being so, it is difficult to conceive how a more adequate warning of the approach of a train could have been given.

Defendant made another request to charge which should have been granted, namely, " if the crossing watchman gave notice to intestates by a stop sign, that it was notice to them that a train might cross the crossing on either track." There were double tracks at this point, and a freight train stood on a switch to the west of the crossing. This request assumed that the decedents actually had notice of the stop sign. The only implication to be given to such a warning was that peril awaited one who neglected to heed its admonition. It was not necessary to inform decedents from which direction the danger was imminent. It is difficult to conceive how that could have been done. It was sufficient to bring home to a traveler on the highway the fact that harm, from one direction or the other, lay in the path of one who persisted in his onward journey.

Another request demands attention. The court was asked to charge the jury that the failure to operate the gates did not constitute negligence " on the part of the defendant under these circumstances." The expression " under these circumstances " refers to the fact that the gates were broken and out of order, and that a flagman was stationed at the crossing. As before noted, the failure to protect the crossing by gates could not, in and of itself, be made the basis of negligence. It was sufficient if suitable notice of the approach of the train was given in other ways.

The jury retired with the statement of the court ringing in their ears that even though the flagman stood on the crossing displaying a " stop " sign in plain sight, the plaintiffs might still recover. It is the final instruction to the jury which controls their deliberation. (*Goetz* v. *Metropolitan Street R. Co.*, 54 App. Div. 365, 369; *Freedman* v. *Metropolitan Street R. Co.*, 89 id. 486, 488; *Stern* v. *Westchester Electric R. R. Co.*, 99 id. 491, 494.) Defendant

was entitled to have the jury charged as requested without qualification or condition. The court's refusal so to do was error, and misled the jury to defendant's prejudice.

It follows that the judgment and order in each case should be reversed on the law, and a new trial should be had, with costs to appellant to abide the event.

In McKelvey action: All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.

In Van Buskirk action: All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.