## CMUK v. LEHIGH VALLEY R. CO.

### No. 107.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1941.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Thomas R. Wheeler and Edward L. Robinson, Jr., both of Buffalo, N. Y., of counsel), for appellant.

Buckley & Avery, of Oakfield, N. Y., and Stedman, Waterman & Garnier, of Batavia, N. Y. (Albert J. Waterman, of Batavia, N. Y., of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment in an action to recover damages for injury done the plaintiff, while passing over its tracks in a motor car in which he was a passenger. The accident took place at night in open but settled country, not far from the City of Buffalo upon a highway running east and west and crossing the defendant's tracks at grade and at approximately right angles. There are two tracks at the point in question, the western one used by southbound trains and the eastern by northbound, and the motor was coming from the east. The evidence justified a finding that it was, or had been, raining and that the wind-shield in front of the plaintiff was obscured. The approach to the crossing was protected (1) by a "disc sign" on the right hand side of the road, about four feet from the ground, 315 feet from the crossing and about five feet from the edge of the pavement; (2) by a crossing signal consisting of a white post and an inverted wooden triangle, bearing a warning legend, about twenty feet west of the west track and eight feet north of the pavement, the apex of the triangle being ten feet above the ground; and (3) by a yellow, or "sodium," light five feet south of the pavement and forty-four feet west of the tracks. Although the highway crosses the tracks at a right angle, in order to do so it has to bend a little to the right as one travels west, and in consequence, the head-lights of a motor do not at night pick up the disc or the crossing signal as soon as they would if the road were straight, or if each were on the south side of the pavement. The train which struck the motor car, or which the motor car struck—whichever was the fact—was backing south upon the west track, the locomotive carrying a regulation light which illuminated the track for some 300 feet in advance. The train was made up of freight cars and was moving at about twenty miles an hour; it was easily visible to anyone coming from the east who had looked forward and to his right hand; but there was the usual testimony that the locomotive did not blow the whistle or ring the bell, as a crossing signal, and it was on this that the plaintiff chiefly relied for negligence. The appeal raises three questions: that the judge should have directed a verdict for the defendant; that he misdirected the jury; that he erred in admitting testimony.

■ The first and third questions nearly coälesce and need not detain us long. Not only did the plaintiff and the driver of the motor car beside whom he sat swear that they heard no crossing signal, but so did three other witnesses in a motor behind them. The defendant challenges the testimony of these witnesses even to the extent of charging its admission as error—the third point on this appeal—but we can see no reason why the jury could not have accepted it. The witnesses had been travelling upon a road which ran parallel with the defendant's tracks about 1300 feet to the east of them; when they reached the intersection of this road with the highway on which the plaintiff was travelling they turned west and, although they arrived at the crossing after the collision, it was as the railway crew was just getting off the train. They were therefore presumably in a position where they would have heard any crossing signal—at least any whistle—had they been attending; indeed they must have reached the highway before the whistle had ceased because the engineer testified that he not only began to blow when 1200 or 1300 feet away, but that he kept it up until he had crossed the highway. It is true that, coming from witnesses of equal credibility, the testimony of those who do not hear such signals is of little value compared with that of those who do; and in New York it was apparently at one time the law that it would not support a verdict unless the witness had some occasion to listen. Culhane v. New York Central & H. R. R. Co., 60 N. Y. 133. But in Greany v. Long Island R. Co., 101 N.Y. 419, 5 N.E. 425, this was changed—at least by dictum—in a case where the opposing testimony was that of employees of the defendant, and that has now become the law, regardless of whether the witnesses have any reason to be on the watch. Schuster v. Erie R. Co., 145 App.Div. 71, 129 N.Y.S. 262, affirmed 205 N.Y. 569, 98 N.E. 1115.

■ The only remaining ground for directing a verdict was the plaintiff's contributory negligence. The courts of New York appear to adopt the same formula to describe the duty of a passenger in a vehicle to care for his own safety that they use for a driver. (La Goy v. Director-General of Railroads, 231 N.Y. 191, 131 N.E. 886; Nelson v. Nygren, 259 N.Y. 71, 76, 181 N.E. 52); but they have never held, so far as we can find, that a passenger is not justified in relying in any degree upon the driver, when, as here, he is not familiar with the road and the driver is, or that he must exercise the same caution against dangers not known to him, as would be demanded of him were he himself driving. On the contrary they seem disposed to relax in his favor. Baker v. Lehigh Valley R. Co., 248 N.Y. 131, 136, 161 N.E. 445; Nelson v. Nygren, supra, 259 N.Y. 71, 181 N.E. 52; Crough v. New York Central R. Co., 260 N.Y. 227, 232, 183 N. E. 372. The Supreme Court understood this to be the New York rule in Miller v. Union Pacific R. Co., 290 U.S. 227, 234, 54 S.Ct. 172, 78 L.Ed. 285, and we assume that we are still to accept as authoritative that court's interpretation of state law. On any showing the question was for the jury. The car had just crossed the tracks of two other railroads, and the plaintiff was not aware that more were ahead. The night was thick, and it was easy for a person unfamiliar with the neighborhood to become confused, for there were a number of lighted dwellings off to the right and beyond the tracks. Surely reasonable men might differ as to whether in such circumstances the plaintiff was charged with notice of the approach of the train or even that he was about to cross more tracks; had the decision been ours we should have exonerated him without hesitation.

The remaining question is as to that part of the charge which dealt with the warning signs at the crossing. The judge told the jury that the statute required the defendant to keep a sign approved by the Public Service Commission; "but it is for you to say whether they" (the signs) "were such, taken together, or separately, to indicate * * * the presence of this * * * railroad * * * to an ordinarily prudent person * * *. You will therefore consider whether these signs were requisite" ("sufficient" must have been the meaning) "under the conditions such as you find to have existed here. You will determine from the facts * * * whether this approach was adequately protected." Later, the judge modified this by saying that the defendant was not at fault for failing to keep a flagman or gates at the crossing, for permitting a crossing at grade, or for not installing "flashing types of alarm signals" or "any special type." The defendant repeated its original objection, however, to his leaving to the jury whether "we failed to comply with the statute", §

572

53 of the N. Y. Railroad Law, Consol.Laws, c. 75, and the judge answered that he did not think that there was any evidence that it had so failed, but he added: "I mean the question of its adequacy or sufficiency is for the jury." The defendant again excepted and there the matter rested. The inevitable impression from all this was that the jury was to determine for itself whether the crossing was adequately guarded, though the defendant had conformed with the only relevant statute (§ 53) which provided that every railroad should put up a "sign board" of such "shape and design" as the proper commission should approve, and that the commission might "prescribe its location and elevation" and what words should be on it. The plaintiff did not prove that the sign was not in accordance with the commission's order, and indeed, as we have seen, the judge took from the jury any question as to compliance with the section. The charge inescapably presents to us the question whether the defendant was liable for failing to protect the crossing by such other warnings as the jury might think that safety demanded.

█ The law of New York regards the railroad and the traveller as in pari jure at a highway crossing; the railroad must operate the train with a caution commensurate with the danger, but it is not liable for failing to install warning signs at the crossing itself, although their absence is a fact to be considered in deciding what precautions the train should take in crossing. An inadequate sign, or no sign whatever, will not support a recovery, if the train be carefully operated. This has been the doctrine for over seventy years, beginning with Beisiegel v. New York Central R. Co., 40 N.Y. 9, and Grippen v. New York Central R. Co., 40 N.Y. 34. Weber v. New York Central & H. R. R. Co., 58 N.Y. 451, 458, 459, was to the same effect, although Allen, J., declared that it was "not enough, in all cases, to absolve a railroad corporation * * * that the statutory signals are given." In McGrath v. New York Central & H. R. R. Co., 63 N.Y. 522, two of the judges agreed that it would have been an error to require the railroad to post a flagman at the crossing, although his absence was relevant upon the issue of the defendant's care in operation; and in Houghkirk v. President, etc., of Delaware & H. Canal Co., 92 N.Y. 219, 227, 44 Am. Rep. 370, the judgment was reversed because the jury had been allowed to find

that the railroad might be liable for failing to maintain a flagman. Cumming v. Brooklyn City R. Co., 104 N.Y. 669, 10 N.E. 855, and Daniels v. Staten Island Rapid Transit Co., 125 N.Y. 407, 26 N.E. 466, recognized the doctrine, though they added nothing to it; and Vandewater v. New York & N. E. R. Co., 135 N.Y. 583, 32 N.E. 636, 18 L.R.A. 771, was a direct application of it. Elias v. Lehigh Valley R. Co., 226 N.Y. 154, 158, 123 N.E. 73, incorporated a variant which presupposed the original. The Appellate Divisions have applied it without modification in several recent cases. Gilliland v. Delaware & Hudson Co., 207 App.Div. 509, 202 N.Y.S. 710; Killen v. New York Central R. Co., 225 App.Div. 8, 232 N.Y.S. 76; McKelvey v. Delaware L. & W. R. Co., 253 App.Div. 109, 300 N.Y. S. 1263; Pascal v. New York Central R. Co., 254 App.Div. 807, 4 N.Y.S.2d 781; Red Star Express Lines v. Lehigh Valley R. Co:, 257 App.Div. 923, 12 N.Y.S.2d 776. Against these authorities the plaintiff invokes the decision in McGettigan v. New York Central R. Co., 268 N.Y. 66, 196 N.E. 745, 99 A.L.R. 283. In that case the Public Service Commission had given permission to the railroad to set up a flashing signal in the middle of a village street, with which the plaintiffs collided on a rainy night because it was not sufficiently lighted. The court held that by granting the permission the Commission did not imply that the road's duty ended when it complied with the detailed specifications. The plaintiff here wishes us to read this as modifying the preëxisting doctrine that a railroad is not liable for failing to place adequate signs at a crossing. In so doing we should misinterpret it; all the court held was that, having put an obstruction in the street, the road was bound to warn travelers of the obstruction. It held nothing about the road's duty to put up any warning whatever of the crossing; that depended upon quite other considerations.

█ The judge did not in the case at bar affect merely to leave to the jury the general condition of the approaches to the crossing as one fact to be used in determining what care the defendant should have used in operating the train; he allowed it to find the defendant independently guilty because the signs were not adequate. Indeed any such failure could only have been an independent fault, for no signs at the crossing would in this instance have been relevant to the proper operation of

the train. It was not coming too fast; the locomotive was properly lighted; everything was beyond cavil if the whistle had been blown and the bell had been rung; and the failure to give those signals was actionable, however adequate the signs had been. The error was moreover a substantial one which we cannot disregard unless we assume that the charge can never be important in the result.

Judgment reversed; new trial ordered.