227 F.2d 344
 Edna A. BAILEY, as Administratrix of the Goods, Chattels and Credits of Arthur Bailey, Deceased, Plaintiff-Appellant,
v.
The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellee.
Leon METZLER, Plaintiff-Appellant,
v.
The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellee.
 No. 40.
 No. 41.
 Docket 23651.
 Docket 23652.
 United States Court of Appeals Second Circuit.
 Argued October 14, 1955.
 Decided November 18, 1955.
 
 Charlotte L. Smallwood, Warsaw, N. Y., for plaintiff-appellant Bailey.
 John R. Graney, LeRoy, N. Y., for plaintiff-appellant Metzler.
 Ellsworth Van Graafeiland, Rochester, N. Y. (Strang, Wright, Combs, Wiser & Shaw, Rochester, N. Y., on the brief), for defendant-appellee.
 Before CLARK, Chief Judge, and FRANK and WATERMAN, Circuit Judges.
 CLARK, Chief Judge.
 
 
 1
 These are a wrongful-death action brought by the administratrix of decedent Arthur Bailey and a companion personal-injuries suit brought by Leon Metzler arising out of a grade crossing accident which occurred on September 28, 1951, in LeRoy, New York. Originally brought in the New York State Supreme Court, the suits were removed by defendant to the court below, where a trial to the jury resulted in verdicts and judgments for defendant.
 
 
 2
 The Church Street crossing in LeRoy, where the accident occurred, is unprotected by watchmen, gates, automatic signals, or otherwise, except for the usual cross bars. The crossing was not one where the Public Service Commission required that such additional protective measures be taken. See N. Y. Railroad Law, McKinney's Consol.Laws, c. 49, § 53.
 
 
 3
 Previous to the accident, Bailey and Metzler had been working at a warehouse north of the railroad tracks, which run east to west. With Bailey driving, they left the warehouse in a truck to return to their employer's main plant in another part of the Village south of the tracks. Bailey drove east along a driveway with an uphill grade paralleling the tracks until he reached Church Street; then turning right he proceeded south about 44 feet to the crossing where he was struck by a passenger train consisting of two cars and locomotive coming on his left from the east. View from the north of the easterly approach to the crossing was limited by the Union Steel Chest Building to the north and east, with its southern side only twenty feet from the center line of the tracks. Bailey was following closely behind another truck owned by his employer, but the first truck successfully passed over the crossing before the train arrived.
 
 
 4
 Estimates of the train's speed by witnesses for both sides varied from 30 to 48 miles per hour. The train had stopped 1,100 feet east of the crossing and was scheduled to stop 800 or 900 feet beyond it. Most of the witnesses testified that the train had sounded a whistle, although there was disagreement about its volume, timing, and duration. There was testimony by the engineer that the train's automatic bell had been ringing since the last station stop, as well as evidence that noise in the area, the location of buildings, and the direction and velocity of the wind may have diminished the opportunity for hearing train signals at the crossing. There was some controversy whether the train engineer applied the brakes at the earliest possible moment to avoid the accident; but the train was already near when the truck entered the crossing, and this possible ground of negligence has not been vigorously pressed.
 
 
 5
 Plaintiffs object to several exclusions of evidence. First, plaintiffs offered to prove that the Union Steel Chest Building, which obstructed the view to the east, was built on land sold by the railroad, which approved of the building. This evidence was properly excluded, since a finding of negligence could not be grounded on such facts. Cordell v. New York Cent. & H. R. R. Co., 70 N.Y. 119. See also McCowan v. Lehigh Valley R. Co., 232 App.Div. 446, 250 N.Y.S. 170, Id. 238 App.Div. 763, 261 N.Y.S. 1034, affirmed 262 N.Y. 569, 188 N.E. 68. The existence of the obstruction here is relevant only in so far as it affects the railroad's duty of care in giving timely warning of a train's approach and as it affects plaintiffs' duty of care.
 
 
 6
 Error is next assigned for the court's refusal to admit a letter from the Village Board of LeRoy to defendant asserting that the crossing was dangerous and requesting installation of safety devices. If offered to prove the fact of the dangerous condition of the crossing, the letter was obviously mere opinion, and therefore incompetent. Plaintiffs contend, however, that the letter may be admitted to show that the railroad had notice of the alleged danger. But even if the crossing were dangerous and the railroad knew it, these facts would not suffice to furnish a basis for a finding of negligence. Since the crossing was not one where the Public Service Commission had required the railroad to erect gates or place flagmen, negligence cannot be predicated on the absence of these precautions, but must be found, if at all, in defendant's conduct of its activities at the crossing as presently safeguarded. Of course negligence may perhaps still be found as to a defendant, even if legislative command or order of the Public Service Commission is lacking as to the crossing; but under the facts, it is the conduct of the defendant, not the guarded or unguarded nature of the crossing, which is at issue. Plough v. Baltimore & O. R. Co., 2 Cir., 164 F.2d 254, certiorari denied 333 U.S. 861, 68 S.Ct. 740, 92 L. Ed. 1140; Weber v. New York Cent. & H. R. R. Co., 58 N.Y. 451; Cohn v. New York Cent. & H. R. R. Co., 6 App.Div. 196, 39 N.Y.S. 986; Gilliland v. Delaware & H. Co., 207 App.Div. 509, 202 N. Y.S. 710; Scott v. Delaware, L. & W. R. Co., 222 App.Div. 409, 226 N.Y.S. 287; Killen v. New York Cent. R. Co., 225 App.Div. 8, 232 N.Y.S. 76. See also Knight v. Baltimore & O. R. Co., D.C. W.D.N.Y., 8 F.R.D. 256, 261; annotation, 24 A.L.R.2d 1161, 1175. Moreover, a letter expressing the opinion of the Village Board is hardly "notice" of a condition of this sort. The Board has no particular competency or power in the premises, and a mere non-official opinion expressed prior to the accident does not rise to the level of competent evidence of condition. Maltby v. Chicago Great Western Ry. Co., 347 Ill.App. 441, 106 N.E.2d 879.
 
 
 7
 The court also properly refused to allow cross-examination of the train engineer on the question of his knowledge of the provisions of N. Y. Penal Law, McKinney's Consol.Laws, c. 40, § 1985, which prescribes certain duties of blowing the whistle and ringing the bell at crossings under pain of criminal penalties. The purpose of this line of questioning was to show the witness's self-interest in claiming to have given the signals prescribed by the statute. Since these provisions of the Penal Law do not affect the civil liability of the railroad, Vandewater v. New York & N. E. R. Co., 135 N.Y. 583, 588, 32 N.E. 636, 18 L.R.A. 771; Killen v. New York Cent. R. Co., supra, 225 App.Div. 8, 9, 232 N. Y.S. 76, questions as to compliance with these provisions were clearly most prejudicial to the defendant. Hence exclusion was well within the court's discretion. United States v. Quinn, 2 Cir., 124 F.2d 378; United States v. Glasser, 7 Cir., 116 F.2d 690, modified 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, rehearing denied Kretske v. United States, 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222.
 
 
 8
 Plaintiffs contend that the trial judge erred in failing to charge that in the absence of extra precautions, such as crossing gates or flagmen, an obstruction to the view at a crossing calls for a lower rate of speed than ordinarily permissible. This request did not, however, give an accurate statement of New York law. The precedents there support the view that, in the absence of a regulation or ordinance, train speed is not formally limited so long as timely and adequate warning is given of its approach. Warner v. New York Cent. R. Co., 44 N.Y. 465; Hunt v. Fitchburg R. Co., 22 App.Div. 212, 47 N.Y.S. 1034; Young v. Erie R. Co., 158 App.Div. 14, 143 N.Y.S. 176; McKelvey v. Delaware, L. & W. R. Co., 253 App.Div. 109, 300 N.Y.S. 1263; Plough v. Baltimore & O. R. Co., 2 Cir., 172 F.2d 396, certiorari denied 337 U.S. 940, 69 S.Ct. 1518, 93 L.Ed. 1745. Certain cases such as Zwack v. New York, L. E. & W. R. Co., 160 N.Y. 362, 54 N.E. 785; Serano v. New York Cent. & H. R. R. Co., 188 N.Y. 156, 165, 80 N.E. 1025, perhaps suggest that in situations involving crossings without safeguards in populous areas the question of speed may present an issue for the jury. Be that as it may, here, with estimates of train speed varying only between 30 and 48 miles per hour, the existence of the claimed obstruction to view at the unguarded crossing imposed no duty on the railroad to run trains at reduced speed, and it would have been improper for the jury to find such a duty. Rather it was proper for the jury to consider speed, nature of crossing, and obstructions to view as they affected the timeliness and adequacy of warning signals. See McCowan v. Lehigh Valley R. Co., supra, 232 App.Div. 446, 250 N.Y. S. 170.
 
 
 9
 Plaintiffs further contend broadly that the charge was "unfair, prejudicial, inadequate and erroneous in its entirety." This generalized claim seems to go beyond matters which were brought to the attention of the trial judge in such a way as to put him on notice of what is now alleged to be erroneous. See Fed.Rules Civ.Proc. rule 51; O'Connell v. Naess, 2 Cir., 176 F.2d 138; McDonald v. Jarka Corp., 2 Cir., 144 F.2d 53. In any event, the charge sufficiently covered all the essential issues and was not prejudicial to plaintiffs in any matter of substance.
 
 
 10
 Affirmed.