RICHARD DELANEY, Respondent, *v.* TOWN OF ORANGETOWN et al., Defendants, and NEW YORK CENTRAL RAILROAD COMPANY, Now Known as the PENN CENTRAL TRANSPORTATION COMPANY, DEBTOR IN REORGANIZATION, Appellant.

Second Department, May 6, 1974.

*Robert M. Peet (William F. McNulty and Anthony J. McNulty of counsel), for appellant.*

*Dempsey, Spring, O'Keeffee & Florence (Arthur J. Spring and Thomas P. Curtin of counsel), for respondent.*

SHAPIRO, J. The defendant New York Central Railroad Company appeals from a judgment entered against it upon a jury verdict of $117,500 in favor of the plaintiff in this personal injury action. Viewing the facts in the light most favorable to the plaintiff (as we should in a case of this kind [*Faber v. City of N. Y.,* 213 N. Y. 411; *Scanlon v. Temple,* 271 App. Div. 920, revd. on other grounds 297 N. Y. 516; *Lee v. Lesniak,* 40 A D 2d 756]), we affirm the judgment.

### THE FACTS.

The plaintiff sustained his injuries when his automobile was hit by a freight train while passing over a grade crossing. A snowstorm had begun on the afternoon of the accident and at about 4 P.M. the plaintiff's employer let the workers off about an hour early because of the severity of the storm. Another

employee joined the plaintiff in his automobile and they headed for the railroad crossing, which was between 100 to 300 feet west of the exit of the plant parking lot.

The plaintiff was traveling at a slow speed before he got to the tracks, because of the snow, which was falling very heavily in large flakes; he stopped about 35 feet from the tracks and looked to his right, but his vision of the tracks was obscured by brush and so he moved further up to get a good view and completely stopped " a few feet from the railroad track "— about three to five feet from the tracks. At this point both the plaintiff and his passenger looked up and down the tracks. His windshield wipers were working; but, because of the storm, visibility was restricted to about 20 to 40 feet and all he or his passenger could see were the snow and the woods. At that point neither one of them heard any noise emanating from the locomotive. They saw no lights, heard no whistle and received no other warning that a train was approaching the crossing. The plaintiff then proceeded across and the next thing he knew was when he woke up in the hospital, never having seen the train that hit his automobile.

A police officer testified at the trial that he had interviewed the engineer of the train at the accident scene. The engineer told him that the train was traveling about 40 to 45 miles an hour at the time of the impact and that he never saw the automobile, because he was sitting on the right side of the first engine.

A coemployee of the plaintiff, but not the one who was in the automobile with him, testified that he was in the plant parking lot down the road from the crossing and that he heard a thud, a whistle and a screech, *in that order*. He looked up and saw the train stopped at the crossing. He ran along the road to the tracks and, upon looking to his left, he saw the plaintiff's car down the embankment. He was certain that there was no whistle prior to the thud.

The fireman on the train, testifying for the railroad, said that it had begun to snow as they traveled south into Rockland County; that it was snowing severely at the time of the accident, but that the train had nevertheless maintained its speed of 40 to 45 miles an hour; that at the time of the accident the storm was so severe he could only see a distance of about 20 yards in front of the engine; and that even though the headlight was large and very powerful its beam was thrown only about 30 yards. Portions of the examination before trial of the defendant's engineer were read into the record. He had testified that

the snow flakes were big and wet; that visibility was poor; that he could see a good half mile; that the train's rate of speed was well under 50 but somewhat above 40 miles an hour; and that the speed tapes from the locomotive would show the exact speed. *The tapes were never produced at the trial.* He claimed never to have seen the plaintiff's car before the impact. Both the engineer and the fireman claimed that the whistle was blown and the bell sounded before the train reached the crossing.

## APPELLANT'S CONTENTIONS

The railroad on oral argument and in its brief sought reversal of the judgment on three grounds: (1) that the plaintiff's complaint should have been dismissed because the plaintiff was guilty of contributory negligence as a matter of law[1]; (2) that, assuming *arguendo* that the issue of the plaintiff's contributory negligence was one of fact for the jury, the findings on that issue and on the issue of the railroad's alleged negligence were contrary to the weight of the credible evidence; and (3) that the $117,500 recovery allowed the plaintiff by the jury was excessive.

## THE LAW.

Although the appellant does not seriously contend that the proof did not make out a question of fact as to its negligence, it urges that on that issue the finding of the jury was contrary to the weight of the evidence. This court is in entire agreement that the judgment appealed from is not vulnerable on that account. However, the dissenters feel that the plaintiff was guilty of contributory negligence *as a matter of law*. We disagree (cf. *Rossman* v. *La Grega*, 28 N Y 2d 300).

It is an established rule that under ordinary circumstances a motorist approaching a railroad grade crossing is required to proceed cautiously and exercise reasonable care to ascertain whether a train is approaching and to have his vehicle under control to avoid a collision with it (*Delaware, Lackawanna, & Western R. R. Co.* v. *Rebmann*, 285 F. 317; 4 N. Y. Jur., Automobiles, § 564, p. 545). What constitutes reasonable care is to be determined by the elements of danger which exist and the risk which is reasonably foreseeable under the circumstances (*Chamberlain* v. *Lehigh Val. R. R. Co.*, 238 N. Y. 233; *Mead* v. *Louer*, 285 N. Y. 230).

---

1. On the argument of the appeal the appellant's attorney conceded that the "private property" sign shown on the photographs in evidence has no bearing on the plaintiff's right to recover and that the plaintiff was not a trespasser.

Where the crossing is a dangerous one, either because of its location, construction, etc., or because of the elements, the duty of care to be exercised by the motorist is "commensurate with the obvious risk" (*Crough* v. *New York Cent. R. R. Co.*, 260 N. Y. 227, 232). If the railroad tracks at the crossing are not fully in view in both directions in the immediate approach to the crossing, due care requires a traveler to stop, look and listen before attempting to cross, and the failure to do so has been held to constitute contributory negligence as a matter of law (see Ann. 41 A. L. R. 398 and New York cases therein cited at p. 407).

In the case at bar the plaintiff's evidence established that at the time of the accident a severe snowstorm was in progress; that it presented, not an intermittent, but a continuous obstruction to the plaintiff's view; that he *stopped* at a vantage point some few feet from the tracks; that both he and his passenger looked in both directions but were unable to see the tracks in the distance, because of the falling snow, and that after stopping *they listened but heard no whistle or other signal or any other sound to warn them of an approaching train.*

Under the particular circumstances here presented, the plaintiff, after taking the above precautions, was justified in proceeding across the tracks, or at least a jury could so find (*Flannelly* v. *Delaware & Hudson Co.*, 225 U. S. 597; *Baltimore & Ohio R. R. Co.* v. *Goodman*, 275 U. S. 66; *Chamberlain* v. *Lehigh Val. R. R. Co.*, 238 N. Y. 233; *Hartwell* v. *Navin*, 268 App. Div. 939, mot. for lv. to app. den. 269 App. Div. 720).

If a traveler stops at a proper vantage point near a railroad crossing and looks but is unable to see because of atmospheric conditions which pose a continuous obstruction to his view, he must necessarily rely upon his sense of hearing. Under such circumstances, if he goes forward after listening for a train and hearing no whistle or other sound of its approach, his attempt to cross the tracks cannot be adjudged contributory negligence as a matter of law (*Schuknecht* v. *Chicago, Milwaukee, St. Paul & Pacific R. R. Co.*, 74 S. D. 61, 69-74).

The facts here are distinguishable from *Crough* v. *New York Cent. R. R. Co.* (260 N. Y. 227, *supra*) and *Wadsworth* v. *Delaware, Lackawanna & Western R. R. Co.* (296 N. Y. 206), relied upon by the appellant.

In *Crough* the Court of Appeals said (pp. 231–232): "The driver had to give attention to his car but it is difficult to suggest a 'possible hypothesis based on the evidence' which would exonerate him of the charge of contributory negligence. He

was heedless of ordinary precaution in a place which he must have known to be dangerous or he would not have driven on the tracks immediately in front of the train. If he had checked the speed of his car and looked right and left before he went on the tracks, the conclusion is inevitable that he might have avoided the accident. If he had used his senses of hearing and sight and proceeded cautiously and carefully (*Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38, 47) he would not have failed to sense the approach of the train. He could not, except at his own risk, drive on the railroad track, relying on not having seen a train or heard a signal and taking no further precaution. If the crossing is dangerous, the care should be commensurate with the obvious risk. Francis knew when he went on the tracks that if a train came along before he got across the car would be hit and that he and his companions might be killed. Could it be said that under any hypothesis arising from and based on the evidence he did all that he could do to avoid danger? The evidence in this case points to a total lack of care on the part of the driver. (*Schrader* v. *N. Y., C. & St. L. R. R. Co.*, 254 N. Y. 148.)'' The distinction between our case and *Crough* is clear. In *Crough* the proof showed that the decedent did *not* stop and that if he had stopped, looked and listened he could have heard or seen the train and thus avoided the accident. Here, the proof is that the plaintiff did stop, look and listen and heard nothing.

In *Wadsworth*, where the Court of Appeals reversed a plaintiff's judgment and dismissed the complaint, the proof showed that on the day of the accident the weather was clear; that the road approaching the crossing permitted a view some 1,100 feet west of the crossing, from which direction the train came; *and that the plaintiff's truck did not stop before attempting to cross the tracks.* The accident was otherwise unexplained. In reversing, the Court of Appeals pointed out that the record exhibited a total lack of care on the part of the driver (Chief Judge LOUGHRAN and Judge CONWAY dissented upon the ground that even under those circumstances the plaintiff's contributory negligence was one of fact for the jury). Our case is distinguishable from *Wadsworth* because we have here the added factors of a severe snow storm (a continuing condition) and the fact that, under the proof, the jury could find that the plaintiff did stop, look and listen.

In support of its contention that the plaintiff was guilty of contributory negligence as a matter of law, the railroad relies on the familiar rule that testimony to the effect that one looked

but did not see what was there to be seen is incredible as a matter of law and that either he did not look as claimed or he looked but disregarded what he saw (*Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Unger* v. *Belt Line Ry. Corp.*, 234 N. Y. 86, 90; *Weigand* v. *United Traction Co.*, 221 N. Y. 39, 42). That rule has no application in a case such as this where visibility is at issue. In *Lee* v. *General Baking Co.* (40 A D 2d 687) this court held that whether a party saw when he looked presented a question of fact for the jury where there was a conflict in the testimony with respect to the degree of visibility at the time of the accident.

Under the circumstances, the plaintiff was not guilty of contributory negligence as a matter of law and the finding of the jury (implicit in its verdict) that he was not guilty of contributory negligence as a matter of fact should not be disturbed.[2]

The appellant's last contention — that the verdict is excessive — is palpably without merit. The judgment appealed from should be affirmed, with costs.

MUNDER, J. (dissenting). This action should have been dismissed on the motion of the defendant railroad made at the end of the plaintiff's case and renewed at the close of the trial, on the ground that the plaintiff was contributorily negligent as a matter of law.

Judge BERGAN in *Rossman* v. *La Grega* (28 N Y 2d 300, 306), a death action, noted a tendency to treat the issue of contributory negligence " almost always as a question of fact ". While he cited several personal injury cases in which the court found the facts to spell out a jury question as to contributory negligence, Judge BERGAN also stated in *Rossman* (p. 309), " It is, at least, reasonably arguable; and if it is arguable it ought not be held as a matter of law that the dead man was negligent ".

The tendency is no doubt stronger in a death action, but recent decisions in personal injury actions have indicated that contributory negligence may yet be determined as a matter of law. (See *Winnick* v. *New York State Elec. & Gas Corp.*, 38 A D 2d 623, affd. 32 N Y 2d 624, in which a jury verdict for the plaintiff was reversed and the complaint dismissed on the ground that the plaintiff was contributorily negligent as a matter of law.) Further, the instant case involves injuries sustained at a railroad crossing and, as Judge BERGAN noted in *Rossman* (p. 305), such cases fall into " a special category of the law."

---

2. The issue of contributory negligence was forcefully placed before the jury, for the Trial Justice referred to it at least nine times in his charge.

Given the factual situation of a train and an automobile arriving at a crossing at the same time, it is clear the former has the paramount right of way (*McKelvey* v. *Delaware, Lackawanna & Western R. R. Co.,* 253 App. Div. 109). Starting with that premise, I turn to the record.

The proof established that at the time of the accident, on March 1, 1963 at approximately 4:00 P.M., it was snowing heavily. The passenger who was traveling with the plaintiff testified at the trial in November, 1971 that visibility at the crossing was restricted to 20 to 40 feet up and down the railroad tracks. Had it not been snowing, he could have seen more than a quarter of a mile. He further testified that he recalled stopping about three feet from the tracks and looking north (the direction from which the train was coming), but did not see the train and heard no whistle. This same witness testified at a hearing in August, 1963, five months after the accident, that he could not recall whether the plaintiff had stopped at the crossing and that the windows in the automobile were closed.

The plaintiff testified at the trial that the last thing he remembered before the accident was looking to his right (north) and seeing his passenger looking to his left (south). He had stopped and did not see anything coming. The defroster, the heater and windshield wipers were all in operation. It was snowing heavily and he could see approximately 25 feet up the tracks. The picture of limited visibility painted by the plaintiff and his passenger contrasts sharply with the testimony of a fellow employee, Stensgard, who stated that, despite the snow, visibility was "a couple of hundred feet". Immediately after the accident he could see the stopped train from his employer's parking lot, 200 feet away. He testified at the trial that he heard the train whistle only after hearing the impact "thud", but admitted he was not listening for a whistle. There was some indication that a few weeks after the accident Stensgard told a railroad investigator that he definitely heard the train whistle prior to the impact, but at the trial he denied that was true.

The above evidence leads to either one of two conclusions, both of which require reversal and dismissal. First, the plaintiff's testimony that he stopped, looked and listened before proceeding across the tracks was incredible as a matter of law. This is so because if he had stopped and looked and listened he could not help but see the approaching train (see *Dolfini* v. *Erie R. R. Co.,* 178 N. Y. 1). The testimony of Stensgard and the photographs taken by Police Officer Florio minutes after

the accident show that visibility was not as limited as testified to by the plaintiff and that the massive locomotive coming down the tracks with its headlight beaming was visible for several hundred feet, at the least. I note, too, that the plaintiff's passenger testified in August, 1963, just months after the accident, when the event was obviously fresher in his mind than at the trial in 1971, that he did not know whether the plaintiff had stopped or not. This same passenger sued the plaintiff to recover for his own injuries based on the plaintiff's negligence and that action was settled.

The second conclusion is that, even giving the plaintiff's evidence every favorable consideration and inference, that evidence shows that his proceeding across the tracks when he did was negligence as a matter of law. It was snowing so heavily, according to his testimony, that he could see only 25 feet up the tracks. A driver cannot and should not blindly operate an automobile, particularly at a railroad crossing which is inherently dangerous, when his view is obscured by snow (see *Ranstrom* v. *Oregon Short Line R. Co.*, 18 F. Supp. 256, 260; *Papageorge* v. *Boston & Maine R. R. Co.*, 317 Mass. 235). A train traveling 40 miles per hour can travel 25 feet in a split second, certainly in less time than it would take a stopped automobile to start and travel on a snow-covered road across the tracks. Despite the blanket of snow and the impaired visibility, the plaintiff attempted to cross the tracks without getting out of the car, or even rolling down the windows, to better see or hear. He said he heard no whistle, and that is understandable in view of his testimony the windows were up, and the heater, defroster and windshield wipers were in operation.

The majority has concluded that a jury could find that the plaintiff's conduct at the crossing justified his proceeding across the tracks. I cannot agree. The plaintiff, by his own admission, knew that his conduct was ineffectual in determining whether a train was coming. He could not see and he could not hear, yet he proceeded. That was negligence as a matter of law (see *Crough* v. *New York Cent. R. R. Co.*, 260 N. Y. 227; *Rowe* v. *Boston & Maine R. R.*, 95 N. H. 371).

Accordingly, the judgment should be reversed and the complaint dismissed.

GULOTTA, P. J., and MARTUSCELLO, J., concur with SHAPIRO, J.; MUNDER, J., dissents and votes to reverse and to dismiss the complaint, in an opinion, in which BENJAMIN, J., concurs.

Judgment of the Supreme Court, Rockland County, entered December 28, 1971, affirmed, with costs.