■ In the Matter of NICHOLAS ANNIS et al., Appellants, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. — Order, Supreme Court, New York County (Edward Greenfield, J.), entered April 27, 1984, denying petitioners' motion to renew and adhering to a prior order (same court), entered February 27, 1984, which had denied an application for leave to serve a late notice of claim, unanimously reversed, on the law, on the facts and in the exercise of discretion, without costs or disbursements, the motion to renew granted and, upon renewal, the motion for permission to serve a late notice of claim is granted. The appeal from the order of said court entered February 27, 1984, is dismissed as superseded by the appeal from the said order of April 27, 1984.

We agree that, under the circumstances of this case, it was an improvident exercise of discretion for Special Term to deny leave to serve a late notice of claim. It is alleged that on June 21, 1983, petitioner Nicholas Annis (Nicholas) was a passenger on a subway train which derailed between the West 4th Street and Broadway-Lafayette stations. A notice of claim, served September 22, 1983, two days after expiration of the 90-day period, was "disallowed" by the Transit Authority as untimely on October 13, 1983, whereupon petitioners brought this proceeding for leave to serve a late notice in accordance with General Municipal Law § 50-e (5).

Following denial of the application, petitioners sought renewal, submitting, in addition to Nicholas' own affidavit, the affirmation of his orthopedist, which confirmed that he had been furnished a history by Nicholas on his initial visit on July 29, 1983. This history indicated that he had injured his left knee in

a subway derailment on June 21, 1983. X rays were taken and subsequent treatment was rendered on August 19 and September 12, 1983, at which time the doctor suggested that Nicholas undergo an arthroscopy to ascertain whether surgery would be necessary to correct any meniscal tear. There was submitted an affidavit of a co-worker who had traveled home from work with petitioner daily and who stated that, on the date of the accident, both he and Nicholas left work at 4:40 P.M. and boarded a "D" train from The Bronx to Manhattan. The coemployee left the train at the Seventh Avenue station, while petitioner, as usual, remained on board. Later, when he heard news of the derailment, he ascertained that petitioner had been on the derailed train. After the derailment, which was covered by the news media, Nicholas states he approached two policemen for information but was advised that unless he needed hospitalization, he should "keep moving". While petitioner did not seek medical attention until July 29, 1983, he was out of work from that date until September 19 and, upon learning that the injury was more serious than originally anticipated, he retained counsel on September 21, 1983, who filed a notice of claim the next day.

The purpose underlying the notice of claim provision in General Municipal Law § 50-e is to protect the municipality against unfounded claims and to assure it "an adequate opportunity * * * to explore the merits of the claim while information is still readily available" (*Teresta v City of New York,* 304 NY 440, 443; *see also, Matter of Beary v City of Rye,* 44 AD2d 398, 412). However, it should not operate as a device to defeat the rights of persons with legitimate claims. The statute affords the court discretion to extend the time to serve a late notice in a proper case and, upon such application, permits the court to consider "all other relevant facts and circumstances" (General Municipal Law § 50-e [5]). Among the relevant criteria to be considered are whether the municipality had actual knowledge of the essential facts constituting the claim and whether any prejudice resulted from the delay in notice beyond the 90-day statutory period (*see, Matter of Cicio v City of New York,* 98 AD2d 38, where it was found that the minimal delay in giving notice did not prejudice the city, which had obtained actual knowledge within the 90-day period through the filing of an accident report).

Here, this accident concerned scores of people and may be termed a major disaster. Clearly, respondent had actual knowledge of the occurrence, evidenced by the fact that the train derailment was covered by the news media, involved others who undoubtedly filed claims and the accident had been investigated by the Transit Authority. It is clear that no prejudice resulted to

respondent from the two-day delay in serving a notice of claim, which, it is alleged, was not filed earlier because Nicholas initially believed that his injury was relatively minor but it later became progressively worse. It was only upon learning of the severity of the condition that he did retain counsel, who promptly prepared and filed a notice of claim. On these facts, we exercise our discretion in the interest of justice to permit the filing of a late notice of claim.

We conclude that, under these circumstances, this was a motion to renew, although denominated a motion to reargue. A motion to renew is based upon material facts which existed at the time the prior motion was made, but were not then known to the party and, for that reason, not disclosed to the court (*see, Foley v Roche,* 68 AD2d 558, 568; *American Trading Co. v Fish,* 87 Misc 2d 193). While it is undisputed that the additional proof offered on renewal was in existence at the time of the original application, until a decision was rendered, petitioners could not anticipate that Special Term would have denied the application because of the absence of corroborating proof as to petitioner's involvement in the derailment. While we do find the corroboration persuasive and relevant to the issue, no authority has been cited or found holding that there must be corroboration to support such an application. The issue relating to whether petitioner was actually injured in the derailment is to be determined in the action and is not a requisite to the filing of a notice of claim. Concur — Sullivan, J. P., Ross, Asch and Kassal, JJ.