OPINION OF THE COURT
Saralee Evans, J.
Petitioners are 110 firefighters employed by the New York City Fire Department, each of whom engaged in rescue and recovery work at the site of the World Trade Center on or after September 11, 2001. It is alleged that each of them was exposed to toxins when they were not provided with appropriate respiratory protection while working at the site, and that each developed respiratory and other illnesses during exposure to the air at the site of the disaster. Petitioners seek permission under General Municipal Law § 50-e to file late notices of claim as submitted with the motion. The city objects to joinder of petitioners’ applications in one proceeding and argues that the substantive relief sought should be denied because petitioners do not set forth an adequate excuse for failing to timely file and because the city had no notice of these claims.
With respect to the procedural objection, respondent asserts that, in joining in one special proceeding, petitioners have violated the express filing requirements of CPLR 304. That provision provides that an action or special proceeding is commenced upon filing a complaint or petition with the court and payment of a filing fee. Nowhere does it regulate the contents of a petition or the number of petitioners that may join in an application for relief, and there is no suggestion here that petitioners failed to pay the appropriate fee when their papers were filed. Nevertheless, the city contends that, because the commencement by filing system was instituted as a revenue raising scheme for the State, petitioners should be disallowed from joining their claims. No other law or court rule is cited for this contention.
Special proceedings are governed generally by article 4 of the CPLR. CPLR 402 provides that the pleadings shall conform to the same requirements as a complaint and answer. The statute governing permissive joinder of claims generally *793 (CPLR 1002) provides in relevant part that: “(a) Plaintiffs. Persons who assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences, may join in one action as plaintiffs if any common question of law or fact would arise.” “Neither the CPLR nor any case law requires the payment of additional index number fees in a case where, as here, there are multiple plaintiffs.” (Warren v Cedar Hill Cemetery Assn., 277 AD2d 371, 371 [2d Dept 2000].)
The question is thus a simple one of whether there are “common issues of law and fact sufficient to permit the joinder of the claims of the parties plaintiff in * * * one [special proceeding].” (Chiba v Kurutz, 263 App Div 33, 35 [1st Dept 1941].) Here, similarly situated petitioners all seek the same relief, that is, permission to file a late notice of claim under General Municipal Law § 50-e (5). That statute provides that “the court shall consider in particular, whether the * * * [city] acquired actual knowledge of the essential facts constituting the claim,” as well as “all other relevant facts and circumstances,” including “whether the delay * * * substantially prejudiced the * * * [city].” Another factor to be considered is the reasonableness of the excuse offered for the delay in failing to timely file a notice of claim. (Matter of Hobgood v New York City Hous. Auth., 253 AD2d 555-556 [2d Dept 1998], lv denied 92 NY2d 819 [1999].) “[C]ourts should focus on the purpose served by a Notice of Claim: whether * * * municipal authorities can locate the place, fix the time and understand the nature” of the incident. (Brown v City of New York, 95 NY2d 389, 393 [2000].)
In exercising judicial discretion under General Municipal Law § 50-e (5), factors that have bearing on the issue include whether a petitioner articulates a reasonable excuse for lateness in serving the city with notice, whether the city had actual notice of the claim and whether the city was or would be prejudiced by late receipt of formal notice. Petitioners here collectively invoke the burdens placed upon them after September 11 as their excuse for failing to timely file. They further note the public and municipal awareness of the firefighters’ exposure to potentially toxic conditions at the disaster site as constituting actual notice to the city of the circumstances of each claim. Finally, they collectively rely on evidence of the city’s immediate and ongoing investigation into the conditions at Ground Zero as demonstrating the lack of prejudice to the city.
*794 As respondent repeatedly asserts, petitioners’ application to file late notices relies on the similar, if not identical, facts of each case.[1] I find that the common questions of law and fact relevant to petitioners’ application predominate and that one special proceeding presents the most efficient and economical expenditure of judicial and municipal resources. (Akely v Kinnicutt, 238 NY 466 [1924]; cf., Bellew v City of New York, 272 AD2d 104 [1st Dept 2000].)
Turning then to the merits of petitioners’ application, General Municipal Law § 50-e affords this court discretion to extend the time to serve a late notice in an appropriate case. “Among the relevant criteria to be considered are whether the municipality had actual knowledge of the essential facts constituting the claim and whether any prejudice resulted from the delay in notice beyond the 90-day statutory period * * * ” (Annis v New York City Tr. Auth., 108 AD2d 643, 644 [1st Dept 1985]).
Here, the rescue efforts of the New York City Fire Department during the period following September 11th put the city and the world on notice as to the time, place and circumstances of petitioners’ exposure to toxins alleged to have caused pulmonary damage. Numerous federal, state and city agencies and departments began monitoring the conditions under which petitioners worked at the World Trade Center site, including the air quality,[2] so that the city was not prejudiced by any failure to timely investigate the circumstances of petitioners’ allegations. Clearly, respondent had actual knowledge of the closely studied repercussions of a major disaster. (Annis v New York City Tr. Auth., supra at 645.)
*795 Moreover, at the time of injury petitioners were working as firefighters, doing the work the Fire Department assigned, at assigned sites, under the Fire Department’s direct supervision. Petitioners underwent collective Fire Department medical examinations and breathing tests, resulting in collective injury reports. Respondent thus had actual knowledge of the potential environmental hazards faced by petitioners, the protective equipment it issued or failed to issue, and the injuries suffered by claimants as a result.
This is clearly distinct from the facts of Washington v City of New York (72 NY2d 881 [1988]) and other cases cited by respondent. In Washington, a would-be claimant offered merely his own speculation that an accident report had been filed with city inspectors. The other cases cited by respondent involve individual accidents noted in a particular accident report or medical record in the city’s possession, where the facts known to the city were deemed not to have adequately alerted the city as to a potential claim. (See, Matter of Negron v New York City Health & Hosps. Corp., 262 AD2d 217 [1st Dept 1999]; Kim v City of New York, 256 AD2d 83 [1st Dept 1998]; Mondert v New York City Tr. Auth., 224 AD2d 500 [2d Dept 1996]; Matter of Morrison, 244 AD2d 487 [2d Dept 1997].) Here, by contrast, actual notice is incontestable and the issue of the safety of petitioners’ working conditions was the subject of constant and thoroughly documented investigation by the city and numerous other governmental entities.
Respondent also urges that petitioners have failed to offer a reasonable excuse for the delay in filing notices, discounting as hearsay petitioners’ general invocation of the work responsibilities and emotional burdens thrust on them after September 11. Recollection of the Fire Department’s unflagging efforts during the chaotic period after September 11th, as well as the city’s conflicting statements as to the environmental conditions at Ground Zero, invite speculation as to the existence of a reasonable excuse, but such speculation is unnecessary. The absence of an acceptable excuse is not fatal to an application for leave to serve a late notice of claim where, as here, respondent had actual notice of the essential facts constituting the claim within the 90-day period and suffered no prejudice resulting from the lateness of petitioners’ notices. (Weiss v City of New York, 237 AD2d 212 [1st Dept 1997]; Diallo v City of New York, 224 AD2d 339 [1st Dept 1996]; Chattergoon v New York City Hous. Auth., 197 AD2d 397 [1st Dept 1993]; Goodall v City of New York, 179 AD2d 481 [1st Dept 1992].)
*796 On petitioners’ application, General Municipal Law § 50-e charges this court with striking an equitable balance “between a public corporation’s need for prompt notification of claims against it and an injured party’s interest in just compensation.” (Matter of Gerzel v City of New York, 117 AD2d 549, 550 [1st Dept 1986].) In striking that balance, courts must consider all of the factors, and “the presence or absence of any one factor is not determinative.” (Matter of Morris v County of Suffolk, 88 AD2d 956, 957 [2d Dept], affd 58 NY2d 767 [1982].) In light of the fact that the city had detailed knowledge of the facts on which petitioners’ claims are based and conducted intensive contemporaneous monitoring of petitioners’ working conditions, it will not be prejudiced by the fact that petitioners’ notices were untimely and petitioners’ application is therefore granted.
For the foregoing reasons, the petition is granted and it is ordered that the notices of claim appended to petitioners’ order to show cause collectively as exhibit A are deemed served and filed upon service of a copy this judgment, with notice of entry, upon the respondent City of New York.

. Although respondent repeatedly states that the notices of claim are identical (affidavit of Shaffer paras 2, 8, 9, 10, 16), this is not the case. They are identical in setting forth the cause of each claimant’s injury, i.e., airborne toxins at the disaster site and the lack of protective gear. In this, they rely on the blanket “Member Exposure Report” issued by the Fire Department. (Movants’ exhibit B.) Each claimant’s injuries are particularized, however, and each notice sets forth the dates the claimant worked without protective gear.

. See, e.g., testimony of Thomas R. Frieden, Commissioner, New York City Department of Health, and Joel A. Miele, Commissioner, New York City Department of Environmental Protection, before the United States Senate Committee of Environment and Public Works Subcommittee, February 11, 2002, in which New York City officials described systems instituted immediately after September 11, 2001, to monitor, inter alia, illness and injuries among rescue workers and, starting on September 12, 2001, daily air quality at numerous monitoring sites at Ground Zero, the results of which are posted on various governmental Web sites.