OPINION OF THE COURT
Michael D. Stallman, J.
These 13 separate 9/11-related applications for leave to serve late notices of claim on respondent City of New York are hereby consolidated for decision.[1] These proceedings raise significant questions of subject matter jurisdiction, statute of limitations and commencement by filing.
Background
Petitioners allege that they were exposed to toxic substances during rescue/recovery, construction, and demolition operations at Ground Zero, following the terrorist attacks on the World Trade Center (WTC) on September 11, 2001. Five proposed notices of claim also include spousal derivative claims.
By enacting the Air Transportation Safety and System Stabilization Act of 2001 (ATSSSA), Congress created a federal cause of action for 9/11-related claims of toxic exposure as an exclusive remedy, and vested the federal District Court in the Southern District of New York with exclusive jurisdiction over these exposure claims. (See Pub L 107-42, 115 US Stat 230, reprinted following 49 USCA § 40101.) In In re WTC Disaster Site (414 F3d 352 [2d Cir 2005]), the United States Court of Appeals for the Second Circuit held that the ATSSSA preempted state law remedies for respiratory injuries resulting from exposure to toxic substances from Ground Zero.
Petitioners purchased index numbers and filed unsigned proposed orders to show cause with affirmations and exhibits within one year and 90 days after their claims had allegedly accrued.[2] (See appendix B.) The orders to show cause were promptly signed after being received in the courtroom, but were *164 signed more than one year and 90 days past the relevant accrual dates.
The City opposes the petitions, asserting that each application was not brought within one year and 90 days after the claims had accrued. The City’s argument requires consideration of whether the state court has subject matter jurisdiction to determine the timeliness of petitioners’ claims in the context of an application for leave to serve a late notice of claim, when exclusive subject matter jurisdiction over the claims themselves is vested exclusively in the federal court.
I.
General Municipal Law § 50-e requires service of a notice of claim upon the municipality as a condition precedent to suit. (Williams v Nassau County Med. Ctr., 6 NY3d 531, 535 [2006].) The notice must be served within 90 days after the claim arises, but courts have discretion to grant an extension of time for service of a late notice of claim (see General Municipal Law § 50-e [1], [5]).
“ ‘The key factors which the court must consider in determining if leave should be granted are whether the movant demonstrated a reasonable excuse for the failure to serve the notice of claim within the statutory time frame, whether the municipality acquired actual notice of the essential facts of the claim within 90 days after the claim arose or a reasonable time thereafter, and whether the delay would substantially prejudice the municipality in its defense.’ ” (Powell v City of New York, 32 AD3d 227, 228 [1st Dept 2006] [citation omitted].)
“[T]he presence or absence of any one of the foregoing factors is not determinative, and the absence of a reasonable excuse is not, standing alone, fatal to the application.” (Matter of Porcaro v City of New York, 20 AD3d 357, 358 [1st Dept 2005] [citations omitted].)
If a claim against the City is time-barred, a court lacks discretion to grant leave to serve a late notice of claim. (Pierson v City *165 of New York, 56 NY2d 950 [1982].) The Pierson court reasoned that “[t]o permit a court to grant an extension after the Statute of Limitations has run would, in practical effect, allow the court to grant an extension which exceeds the Statute of Limitations, thus rendering meaningless that portion of section 50-e which expressly prohibits the court from doing so.” (Id. at 955.)
The City argues that the court has no discretion to grant leave here because petitioners’ claims are time-barred under General Municipal Law § 50-i, which provides for a statute of limitations of one year and 90 days for tort actions against a municipality.
It should no longer be assumed that the one-year-and-90-day limitations period of General Municipal Law § 50-i applies to petitioners’ claims. In In re WTC Disaster Site (414 F3d 352 [2005], supra), the United States Court of Appeals for the Second Circuit held that section 408 (b) of the ATSSSA is the exclusive remedy for “claims of respiratory injuries by workers in sifting, removing, transporting, or disposing of [World Trade Center] debris.” (414 F3d at 377.) On its face, section 408 of the ATSSSA does not set forth a specific limitations period for the federal cause of action. Federal law provides that “[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.” (28 USC § 1658 [a]; see Jones v R. R. Donnelley & Sons Co., 541 US 369 [2004].) Thus, in light of WTC, an issue arises as to whether the limitations period should be four years, not one year and 90 days.
Determination of the applicable limitations period is a necessary step in determining whether, under Pierson, this court has discretion to grant leave to serve a late notice of claim. State courts have decided the applicable limitations period of certain federal causes of action that may be brought in state court. (See 423 S. Salina St. v City of Syracuse, 68 NY2d 474, 486-487 [1986] [deciding that three-year statute of limitations, instead of limitations period of one year and 90 days under General Municipal Law § 50-i, applies to action under 42 USC § 1983 asserting improper tax assessments].)
However, section 408 (b) (3) of the ATSSSA presents a question of whether this court has subject matter jurisdiction to decide the applicable limitations period, because this court lacks subject matter jurisdiction over the federal cause of action. “ ‘The question of subject matter jurisdiction is a question of *166 judicial power: whether the court has the power, conferred by the Constitution or statute, to entertain the case before it.’ ” (Ballard v HSBC Bank USA, 6 NY3d 658, 663 [2006], quoting Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997].) Here, section 408 (b) (3) of the ATSSSA provides that “[t]he United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related crashes of September 11, 2001.” Thus, by federal law, only the federal District Court has subject matter jurisdiction over ATSSSA claims. The Second Circuit held in WTC Disaster Site that the ATSSSA preempts state law damages remedies (WTC Disaster Site, 414 F3d at 380), over which this court would otherwise have subject matter jurisdiction, as a court of original, unlimited jurisdiction. (See Kagen v Kagen, 21 NY2d 532 [1968].)
“ ‘Without jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.’ ” (Steel Co. v Citizens for a Better Environment, 523 US 83, 94 [1998], quoting Ex parte McCardle, 7 Wall [74 US] 506, 514 [1868].) Had petitioners commenced plenary actions in state court, and had the City moved to dismiss the actions as time-barred, the state court would clearly be constrained under WTC Disaster Site to dismiss the action for lack of subject matter jurisdiction, without reaching the statute of limitations issue.
State law clearly provides that applications to serve late notices of claim must be brought in Supreme Court or County Court.[3] (General Municipal Law § 50-e [7].) However, state law cannot grant subject matter jurisdiction over a federal cause of action. It is not logically consistent that, on an application for leave to serve a late notice of claim, this court would have subject matter jurisdiction to reach the statute of limitations issue when it lacks such jurisdiction in a plenary action. Hypothetically, had someone sought leave to serve a late notice of claim alleging that the City infringed upon a patent or copyright, the court would not have subject matter jurisdiction to *167 determine whether the infringement claims are time-barred. (See Grafvon Kageneck v Cohen, Pontani, Lieberman & Pavane, 301 AD2d 363, 363 [1st Dept 2003] [“Where resolution of plaintiffs’ allegations of malpractice revolve around analysis and application of patent law, subject matter jurisdiction lies exclusively in the federal courts”].) If the court lacks subject matter jurisdiction over a federal cause of action, then Pierson cannot be read as creating such jurisdiction only for the purpose of determining whether the action is time-barred. “Subject matter jurisdiction cannot be created by the courts themselves, whether erroneously, accidentally or intentionally.” (Priel v Linarello, 7 Misc 3d 64, 67 [App Term, 2d & 11th Jud Dists 2005].)
In sum, this court should not arrogate to itself the authority to determine the applicable limitations period of a federal cause of action, over which it has no jurisdiction, on an application to serve a late notice of claim. That is not to say that this court lacks subject matter jurisdiction altogether over petitioners’ applications. Rather, the court lacks subject matter jurisdiction over only those issues that would determine the merits of petitioners’ claims, because such determinations are within the exclusive jurisdiction of the federal District Court.
Assuming that this court has subject matter jurisdiction to decide the applicable limitations period, strong policy reasons and prudential concerns weigh in favor of deferring to the federal court’s jurisdiction. Reaching the statute of limitations issues would only subvert the congressional intent of the ATSSSA “to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11” (WTC Disaster Site, 414 F3d at 378), when Congress designated one federal District Court to preside over the claims, all of which are assigned to one federal judge. A determination of this court might have issue preclusion effect in the plenary actions in federal court, thus undermining the federal court’s exclusive jurisdiction over ATSSSA claims.
Given the unique circumstances presented here, whether petitioners’ claims may be ultimately found to be time-barred may not be a factor in deciding whether petitioners should be granted leave to serve late notices of claim.[4] The Pierson court’s concern that granting leave to serve a late notice of claim would *168 amount to a de facto extension of the statute of limitations does not apply here. Given the lack of subject matter jurisdiction over the underlying claims, granting leave to serve a late notice of claim cannot be construed as granting an extension of the limitations period. The City may raise the statute of limitations defense, and contest the period of limitations, in the anticipated federal actions.[5]
Although state law is clear that applications to serve late notices of claim must be brought in Supreme Court or County Court (see General Municipal Law § 50-e [7]), the court notes that the question of whether a notice of claim is required for claims governed by the ATSSSA has never been squarely addressed. The ATSSSA’s preemption of state law remedies and the exclusive jurisdiction of the federal court raise the issue of whether a notice of claim must be served as a condition precedent to lawsuits governed by the ATSSSA. (See Felder v Casey, 487 US 131 [1988] [Wisconsin’s notice of claim statute inapplicable to 42 USC § 1983 litigation]; Summers v County of Monroe, 147 AD2d 949, 950 [4th Dept 1989] [“State notice of claim requirements cannot defeat a substantive Federal right”].) If no notice of claim were required, then no application for leave to serve a late notice of claim would be necessary, thus rendering these proceedings, and the City’s objections, academic. For the *169 reasons addressed above, that issue would be appropriately raised in the federal court.
II.
The City’s argument that the unsigned orders to show cause are a nullity raises two issues: (1) whether the applications were properly brought, and (2) whether the filing of the unsigned orders to show cause and affirmations commenced civil judicial proceedings for the applications. As the City indicates, the Court of Appeals held that the filing of “an unexecuted order to show cause is of no legal effect” (Matter of Fry, 89 NY2d at 717; Matter of Graham v County of Fulton, 235 AD2d 824 [3d Dept 1997]). In both Matter of Fry and Matter of Graham, petitioners purchased index numbers and apparently filed unsigned copies of the orders to show cause with the County Clerk. In Matter of Graham, the court declined to sign the proposed order to show cause unless petitioner revised it, and the revised order to show cause was not submitted to the court until 10 days after the expiration of the statute of limitations.
As discussed in section I of this decision, General Municipal Law § 50-e (5) permits the court, upon application, to extend the time to serve a notice of claim. Such an application may be brought either as a motion within a pending action or proceeding, or as an independent application, which itself constitutes a special proceeding. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2211:l, at 36.) If no action or proceeding is already pending, then the petitioner also must file initiatory papers to commence a special proceeding. A motion and a special proceeding each may be brought by order to show cause. (See CPLR 2214 [d]; 403.)
Here, each petitioner filed initiatory papers with the County Clerk.[6] Instead of a proposed order to show cause and a petition, the initiatory papers consisted of a proposed order to show cause and an affirmation with exhibits. At first glance, petitioners *170 thus filed with the County Clerk what look like motion papers, instead of petitions for special proceedings. If so, petitioners should not have brought motions, because no action or special *171 proceeding was pending when petitioners filed their papers with the County Clerk. However, this defect is not fatal, because CPLR 103 (c) permits the court to convert an improperly brought motion for leave to serve a late notice of claim into a special proceeding. (See CPLR 103 [c]; Siegel, NY Prac § 4, at 6 [4th ed].)
CPLR 103 (c) was amended in 2002 to provide that, in the interests of justice, a court “may convert a motion into a special proceeding, or vice-versa, upon such terms as may be just, including payment of fees and costs.” Amendment of CPLR 103 (c) was necessary because of the decision of the Court of Appeals in Matter of Solkav Solartechnik, G.m.b.H. (Besicorp Group) (91 NY2d 482 [1998]), which appeared to indicate that the conversion of a motion into a special proceeding was not permissible. The New York State Assembly memorandum in support of what was adopted as CPLR 103 (c) states, “The inability to effect such a conversion in a proper case can produce injustice.” (Mem in Support, 2002 McKinney’s Session Laws of NY, at 2074.)
The amendment codified a practice of the courts to convert motions into special proceedings where necessary. (See Matter of Lewin v County of Suffolk, 239 AD2d 345 [2d Dept 1997].) In Lewin, petitioner moved for leave to serve a late notice of claim upon the County of Suffolk, claiming that, during her pregnancy, she was exposed to pesticide spraying by the County, which resulted in her child’s blindness and disfigurement. The court granted her motion, and, on appeal, the Appellate Division, Second Department, treated the application as a special proceeding because it was incorrectly brought as a motion.
Except for the title and formalistic language of the papers, the affirmations filed here contain that which a petition would ordinarily contain. Like the petitioner in Lewin, because no action was pending at the time these applications for leave to serve a late notice of claim were brought, these applications are actually special proceedings irrespective of how the initiatory papers were denominated; they should be converted from motions into special proceedings. Accordingly, the orders to show cause and accompanying affirmations with exhibits shall be deemed orders to show cause with petitions for leave to serve a late notice of claim.
In 2001, the Legislature amended CPLR 304 to provide that a special proceeding is commenced by filing the petition alone. (L 2001, ch 473.) The amendment was intended to address logisti *172 cal complications that practitioners faced in commencing special proceedings before expiration of the statute of limitations. (See Alexander, 2002 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C304:1, 2006 Pocket Part, at 105; C403:2, 2006 Pocket Part, at 97-98.) One of the complications that the amendment remedied was the former requirement of filing a signed order to show cause with the petition, at issue in Matter of Fry and Matter of Graham. The New York State Senate memorandum in support of the amendment recounted the difficulties, in pertinent part:
“If the petitioner is nearing the end of the limitations period, commencing the proceeding in an expedited manner will be essential, and in some counties, awaiting the assignment of a judge may take too long. If the petition is to be accompanied by an order to show cause instead of a notice of petition, the process becomes more difficult since the order to show cause must be signed, with appropriate return date inserted, before the order to show cause and petition are filed.” (Senate Mem in Support, 2001 McKinney’s Session Laws of NY, at 1631.)
Thus, the amendment to CPLR 304 was intended to address the very problem affecting the applications before this court.
Because the applications for leave to serve a late notice of claim are converted to special proceedings, and the moving affirmations are deemed petitions, these special proceedings were therefore properly commenced as of the date of the purchase of the index numbers and filing of the affirmations with the County Clerk.[7] Because filing of the orders to show cause was not necessary for commencement, the fact that they were not signed when filed is of no legal significance in determining when the proceedings were commenced. Similarly, neither the dates of signing of the orders to show cause nor their dates of service are relevant to the date of commencement of these proceedings.
All the applications were commenced within one year and 90 days of their alleged accrual dates. “The proper method when computing time periods is to exclude the day of the event and to *173 include the last day up to midnight of that day.” (Bacalokonstantis v Nichols, 141 AD2d 482, 484 [2d Dept 1988], citing General Construction Law § 20.) In its opposition papers, the City miscalculated the period for some of the applications, because it had computed the period as 90 days plus one year, counted as 365 days. However, because 2004 was a leap year, and the relevant “one year” of the one-year-plus-90-day period embraced February 29, 2004, the relevant “one year” must be counted as 366 days. (See General Construction Law § 57.) By the City’s method, the applications in Matter of Baumann and Matter of Fitzpatrick were filed one year and 91 days after their alleged accrual dates. When correctly computed, both applications are brought exactly one year and 90 days after the alleged accrual dates.
If an application for leave to serve a late notice of claim is made prior to the expiration of the limitations period, then the limitations period is tolled, pursuant to CPLR 204 (a), from the time that the party “seeks permission” to serve a late notice of claim until the court’s order determining the application takes effect. (Giblin v Nassau County Med. Ctr., 61 NY2d 67, 72 [1984]; Barchet v New York City Tr. Auth., 20 NY2d 1 [1967].) Thus, even if the limitations period of General Municipal Law § 50-i applies to these applications, the limitations period would have been tolled by the filing of these applications with the County Clerk.
HI.
Assuming, until the issue is ultimately decided by the federal court, that a notice of claim is a necessary condition precedent to suit in federal court, this court grants petitioners leave to serve late notices of claim. Their applications are similar to hundreds of other individual applications for leave to serve late notices of claim that this court has previously granted. The City had actual notice of the essential facts constituting petitioners’ claims of exposure to toxic substances; there is no evidence that the City has been prejudiced. (See e.g. Matter of McGillick v City of New York, 13 AD3d 195, 195 [1st Dept 2004]; Matter of Edwards v City of New York, 2 AD3d 110 [1st Dept 2003]; see Stephenson v City of New York, 11 Misc 3d 492, 494 [Sup Ct, NY County 2005]; see also O’Halloran v City of New York, 1 Misc 3d 568 [Sup Ct, NY County 2003].) As this court noted in Matter of O’Halloran,
“Given the unprecedented circumstances of the de *174 struction of the World Trade Center and the clearing of the site thereafter; the well-publicized allegations of toxic substances in the smoke and debris (despite well-publicized assurances by the federal government that the air quality met safety standards); the remarkably similar health claims of many workers, both City and private employees, involved in the rescue, clearance and transportation work related to the site and its debris; and the hundreds of other site workers’ claims that the City did not provide them with appropriate respiratory and other protective equipment; it is not reasonable for the City to assert that the City did not have notice of the nature and substance of this claim within a reasonable time after the 90-day as-of-right filing period.
“The investigation of environmental concerns by various levels of government, and the intense media attention and public discussion of the working conditions, air quality and the composition of World Trade Center debris and the smoke and fumes emanating from the debris, bely the City’s contention that it was surprised by petitioner’s notice of claim and that it did not obtain actual knowledge of the nature of petitioner’s claims respecting the City’s alleged acts and omissions.” (O’Halloran v City of New York, 1 Misc 3d 568, 570-571 [2003].)
Having considered the relevant factors for granting leave to serve a late notice of claim (see General Municipal Law § 50-e [5]), the court exercises its discretion to grant each petitioner such leave. General Municipal Law § 50-e (5) “should not operate as a device to defeat the rights of persons with legitimate claims.” (Matter of Annis v New York City Tr. Auth., 108 AD2d 643, 644 [1st Dept 1985].)
Conclusion
Accordingly, it is hereby adjudged that each of these applications is granted, and the notices of claim are deemed served timely nunc pro tunc upon entry of the decision and judgment, without prejudice to the City’s statutory right to take an oral examination of petitioners under General Municipal Law § 50-h.

. By administrative order, all 9/11-related Supreme Court personal injury litigation, including applications for leave to serve a late notice of claim, is assigned to this court. These applications were finally submitted on June 9, 2006, along with approximately 250 other post-9/11 applications for leave to serve late notices of claim.

. Each petitioner contends that his or her claim accrued on the date of discovery of the injury, citing CPLR 214-c (3). CPLR 214-e (3) provides that, for the purposes of General Municipal Law §§ 50-e and 50-i,
“a claim or action for personal injury . . . caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body . . . shall be deemed to *164 have accrued on the date of discovery of the injury by the plaintiff, or on the date when through the exercise of reasonable diligence the injury should have been discovered, whichever is earlier.”
In opposing these petitions, the City seems to assume that CPLR 214-c applies. Therefore, the court assumes, without deciding, that CPLR 214-c applies to petitioners’ claims.

. On October 28, 2004, the City and law firms representing those alleging toxic exposure while working at Ground Zero agreed in federal court that all applications for leave to serve late notices of claim would be brought in state court.

. The decision of the Appellate Division, First Department, in Matter of Goffredo v City of New York (33 AD3d 346 [1st Dept 2006]) is distinguishable. In Matter of Goffredo, the First Department affirmed this court’s decision denying leave to serve a late notice of claim, *168 because the application was brought after expiration of the limitations period of General Municipal Law § 50-i. Unlike petitioner in Matter of Goffredo, the applications here were brought within one year and 90 days of the alleged accrual dates of petitioners’ claims, as discussed in section II.
Moreover, WTC Disaster Site, which was decided after this court’s decision in Matter of Goffredo, prompted reexamination of the applicability and reach of state law in cases covered by the ATSSSA, particularly as concern the issues of subject matter jurisdiction, the applicable limitations period, and notices of claim — issues which were assumed as settled principles when this court decided Matter of Goffredo.

. Once the applicable limitations period is determined, analysis of an action’s timeliness ordinarily requires a determination of the accrual date for each cause of action. Because WTC toxic exposure claims generally are predicated on the applicability of CPLR 214-c (see n 2), consideration of the circumstances of exposure, onset of symptoms, causation and awareness of a causal relationship (e.g., the so-called “WTC cough”) and other such issues would require exploration in discovery proceedings before the accrual date can be determined. Given the summary nature of late notice proceedings and the jurisdictional and policy issues previously discussed, such discovery proceedings would be appropriately conducted in the plenary action anticipated to be brought in federal court. Thus, in other leave applications, uncertainty respecting the accrual date did not prevent this court from granting the applications and thereby permitting the parties to litigate the statute of limitations issues in federal court. In the instant applications, the City apparently does not dispute petitioners’ alleged accrual dates.

. The procedures for commencement of special proceedings and orders to show cause in the Supreme Court, New York County, are explained in detail on the court’s Web site at <http://www.courts.state.ny.us/supctmanh/ case_commencement.htm> and at <http://www.courts.state.ny.us/supctmanh/ ex_parte_applications.htm.>
In a nutshell, to commence a special proceeding by order to show cause (OSC) in New York County in Supreme Court, the petitioner must file a petition with the County Clerk, by completing an application for an index number, a cover sheet form, and paying a filing fee of $210. As discussed fully in sec-
*170 tion II of this decision, filing a signed OSC is no longer required to commence a special proceeding.
After the copy of the papers is filed, the petitioner must proceed to the court’s ex parte office (60 Centre Street, room 315) with the original, unsigned OSC and a copy of the petition for review. The ex parte office reviews the proposed OSC for form. If the proposed OSC requests immediate attention because of an emergency, an affidavit or affirmation is required explaining the nature of the claimed emergency. The person submitting the OSC must inform the clerks at the ex parte office of the emergency so that the OSC may be reviewed immediately.
If the proposed OSC is not rejected for form, the person submitting the OSC must file a request for judicial intervention and pay the appropriate fee at the County Clerk’s cashier (60 Centre Street, room 160), before the ex parte office will accept the proposed OSC for submission. Once the proposed OSC is approved as to form by the ex parte office, the person submitting the OSC must deliver the original, unsigned, proposed OSC to the assigned justice for signature.
On the door of the ex parte office is a sign which states, “Order to Show Cause will be available 24 hours after submission. It is the responsibility of the movant to arrange for transmittal of the order to the assigned justice.” It is not unheard of that days and weeks pass before movants retrieve approved, proposed OSCs from the ex parte office for delivery to the assigned justice.
For this court, after the papers have been filed and processed as explained above, the movant must present the proposed OSC to the courtroom part clerk. The movant should confirm that the assigned justice is available to consider the order to show cause, and the movant must alert the part clerk and/or justice to any urgency. This court ordinarily reads and signs or declines proposed orders to show cause on the day when they are presented at the courtroom or the next business day, depending on its trial schedule.
Thus, because of the logistics involved in processing the OSC, it is possible that an OSC commencing a special proceeding will not be signed on the day that a petitioner files the initiatory papers with the County Clerk, especially if papers are filed late in the day. The court’s vacation schedule might also present hurdles, if petitioners do not confirm that the justice is available when presenting the OSC and do not request the OSC to be assigned to an ex parte justice when the assigned justice is unavailable.
IAS Part 5 was officially closed when the assigned justice was on vacation from February 23 through March 10, 2005. The papers submitted with these OSCs do not set forth any exigent circumstances and do not state that the statute of limitations was imminently expiring; there was no affirmation of emergency.
Practitioners are reminded that submitting papers to the ex parte office is not considered filing with the clerk of the court (i.e., the County Clerk). (See Matter of Mendon Ponds Neighborhood Assn, v Dehm, 98 NY2d 745, 746 [2002].) Although the County Clerk’s office is physically located in the main courthouse of the Supreme Court in New York County at 60 Centre Street, filing papers with any office of the courthouse other than the office designated by the County Clerk for filing papers is not considered filing with the clerk of the court.

. That is not to say that a special proceeding may be commenced by filing of an affirmation alone. In New York county, the County Clerk will not accept the affirmation alone as proper papers for commencement of a special proceeding. The papers should be denominated a petition to avoid the risk that the papers will be rejected for filing. It was fortuitous that the County Clerk accepted the affirmations for filing, because the affirmations were accompanied by unsigned OSCs.